CHARLES L. INGERSOLL

v.

DANIEL P. BANISTER.

ACCOUNTS — *books as evidence*. Where an agent sold the grain of his principal to a merchant on time, and before it was paid, the agent and merchant became partners, and this debt was taken into account by them, the principal would not thereby have an action against the firm, and an arrangement on the dissolution of the partnership that the agent should pay for the grain, did not render him the debtor of his principal, or prevent him from recovering for the grain of the purchaser. And it was error to admit the firm books in a suit by the owner of the grain against the purchaser, to prove that it was agreed the agent should pay him. They were not evidence to bind the owner of the grain. Account books are not admissible as evidence until it is proved that they are the books of original entry, that persons had settled by and found them correct, that some of the items charged had been delivered, that the trader had no clerk when the entry was made.

WRIT OF ERROR to the County Court of De Kalb county; the Hon. EDWARD L. MAYO, Judge, presiding.

This was an action of assumpsit, brought by Charles L. Ingersoll, in the County Court of De Kalb county to the June Term, 1865, against Daniel P. Banister. The declaration contained the usual common counts. The plea of the general issue only was filed. A trial was had at the return term by the court and a jury.

It appears that plaintiff by his agent, Norman Weaver, sold to defendant a quantity of wheat, oats and corn, and took this receipt.

"CORTLAND, Nov. 24, 1862.

"Bought of N. Weaver, Ingersoll's wheat 152 50-60 bush. at 60c. per bush.; oats 182 5-32 at 56c per bush.

"(Signed)    D. P. BANISTER."

Weaver testified, that there was seven hundred bushels of corn or upward, but no receipt was given for it; that it was sold for 22 cents per bushel and upward. He states that the

aggregate amount of the wheat, corn and oats, was $437.04, and that Ingersoll had never been paid.

It also appears, that, in July, 1863, Weaver and defendant formed a partnership, which continued until December, 1864. The firm books show that this indebtedness was passed to the credit of Ingersoll with the firm, and on its dissolution that the amount was charged to Weaver's account. It, however, does not appear that these entries were made with the knowl-ledge or consent of plaintiff, or that he ever sanctioned them. And Weaver swears they were incorrect, and the latter was made after he left the firm. There was other evidence in reference to these entries, and a settlement by the partners, but it is not material to an understanding of the case, in the view the court has taken of the questions arising on the record.

The jury found a verdict for the defendant, and the plaintiff entered a motion for a new trial, which the court overruled and rendered judgment on the verdict. Plaintiff brings the record to this court on error, and asks a reversal of the judgment.

Mr. R. L. DIVINE, for the plaintiff in error.

Mr. CHAS. KELLUM and Mr. LUTHER LOWELL, for the defend-ant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

There seems to be no doubt that defendant in error pur-chased the grain. This is proved both by his receipt, and Weaver's testimony. But he seeks to discharge himself from paying for it by showing, that, by an arrangement with Weaver, the latter was to become the debtor to plaintiff in error, and to pay for the grain. To establish that fact, defendant in error proved, that, after he bought the grain, Weaver became his partner in business. He then introduced the firm books to show that the amount which he was to pay for the grain, had, on a settlement of the firm business, been charged to Weaver. Defendant in error insists that he was thereby discharged from

all liability, and that plaintiff in error must look to Weaver for his money.

Weaver was examined as a witness and denies that he ever assumed the payment of the debt or made any such agreement. But he swears, that, by the terms of his settlement with defendant in error, the latter was to pay all of the firm debts. He also states, that, when this debt of defendant in error was transferred to the firm books, witness objected, but defendant in error said his means were all in the firm, and it would be taken out of his means when it should be paid.

From this evidence it would seem that the arrangement contended for never existed. But even if it had been proved, that Weaver and defendant in error had made such an arrangement, how could that alter the rights of plaintiff in error in the slightest degree? It is not pretended that he was a party to the arrangement, or ever ratified it. While such an agreement might bind the parties to it, we are at a loss to comprehend how plaintiff in error, a stranger to it, could be affected by it. No one will contend that Weaver and defendant in error could, by their arrangement, make Weaver the plaintiff's debtor for a sum owing him by defendant in error, and without the consent of plaintiff in error. We are confident that such a rule has never been announced, and yet if we understand this case that is the rule contended for by defendant in error. The injustice of such a rule is so palpable that it need only to be stated to be appreciated. No man can be made the debtor of another without the consent of the creditor at the least.

Nor does the fact that Weaver was the agent of plaintiff in error to sell the grain, in the least alter the case. An agent has no right to satisfy the debt of his principal for any thing but money, or to assume the debt and release the debtor, unless authorized by his principal. This is not within the ordinary power of an agent, — to do so he must be specially authorized. And in this case there is no evidence that such authority was given, or that the agent had been in the habit of assuming debts due his principal, and that he had ratified such acts.

Even if the account books of the firm had been admissible as

evidence against plaintiff in error, and we do not see how they could be, a proper foundation for their admission was not laid. It was not proved, that they were books of original entry, that defendant kept no clerk, that persons had settled by these books and had found them correct, or that some items of the account had been delivered to plaintiffs in error. But, in fact, there was but one charge, which has been held prevents books from being introduced. Again, the charge is not against plaintiffs in error, but is against Weaver. The court erred in admitting the books in evidence; and likewise in overruling a motion for a new trial. The judgment of the court below is therefore reversed and the cause remanded.

*Judgment reversed.*