Everett House, impleaded, etc.

v.

Amelia Beak et al.

*Filed at Ottawa May 12, 1892.*

1. Contract "on sale or return"—*defined.* A contract "on sale or return" is an agreement by which goods are delivered by a wholesale dealer to a retail dealer, to be paid for at a certain rate, if sold again by the latter, and if not sold, to be returned within a reasonable time. If the vendee returns the goods, the contract of sale is at an end; if he does not, the sale becomes absolute, and the price of the goods may be recovered in an action for goods sold and delivered.

2. Same—*liability of purchaser.* Such sales may be regarded as subject to a condition subsequent,—that is, upon a condition that if the goods are not sold they are to be returned. Therefore the property vests presently in the vendee, defeasible on the performance of the condition. If the vendee disables himself from performing the condition, or fails to perform it within a reasonable time, his liability to to pay the price fixed becomes unconditional, and the vendor may declare upon *indebitatus assumpsit.*

3. In such case the property in the goods passes to the purchaser subject to an option in him to return them within a fixed or reasonable time. The price is fixed at the time of the sale and delivery of the goods. The purchaser deals with the goods as his own, disposes of them as he pleases, for cash or on credit, is under no obligation to give any account of his disposition of them, and is only liable for them at a price fixed beforehand, without any reference to the price at which he sells them.

4. On a sale with a privilege of returning the property when the buyer may choose to make return or on demand of the seller, the buyer may make himself liable to pay the price fixed by refusing to return the same upon demand made for it by the seller; but if the seller does not want the property, and makes no demand for it, still the buyer will become liable to pay the price fixed, upon failure to return the property within a reasonable time.

5. Same—*what is reasonable time for return of the goods.* If no time is specified within which the return is to be made, the law implies that the goods are to be returned within a reasonable time. What is a reasonable time will depend upon the circumstances of each case.

6. Evidence—*books of account—when admissible—proof necessary therefor—former decision.* To admit a party's books of account in evidence, the common law requires that the entries therein shall be proved

by the clerk or servant who made them, if he be alive and can be produced; and it is necessary that the entries shall have been made in the ordinary course of business by a person whose duty it was to make them, and that they shall have been made contemporaneously with the delivery of the goods, so as to form a part of the *res gestæ.*

7. Section 3 of the act in regard to evidence and depositions, first passed in 1867, adds to and enlarges, but does not repeal, the common law rule for the admission of a party's books of account in evidence. A contrary statement in *Presbyterian Church* v. *Emerson,* 66 Ill. 269, is *obiter dictum.* This statute authorizes the party himself to testify to his own books, which was not allowed at common law.

8. It was not the intention of the statute to prohibit the introduction in evidence of books of account kept by a clerk, when such clerk is living in the State and is able to testify to the correctness of the books. The statute merely permits an interested witness to testify to all the facts necessary to lay a foundation for the admission of the books of account.

9. The books of original entries kept by the party himself are admissible to sustain an account composed of many items, on proof that some of the articles were delivered at or about the time the entries purport to have been made; that the entries are in the handwriting of such party; that he kept no clerk at the time, and that persons having dealings with him have settled by such books and found them to be fair and correct.

10. Where the clerk who makes the entries has no knowledge of their correctness, but makes them as the items are furnished by another, it is essential that the party furnishing the items should testify to their correctness, or that satisfactory proof thereof (such as the transactions are reasonably susceptible of) from other sources shall be produced.

11. In an action upon an account for goods sold and delivered, there was evidence that the goods described in the account, amounting in value to over $5000, were delivered to the defendant, and the clerk who kept the books of original entries swore to their correctness, and the party who furnished the items to such clerk testified to their correctness. It was also shown that the defendants paid $1000 on the account without questioning it, and accepted statements of the account, saying it was "all right," and that for the period of three years after the account was presented, on frequent applications for payment, no objection was ever made to the correctness of the account: *Held,* that the proof established the facts necessary to admit the books in evidence.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. George Driggs, Judge, presiding.

This is an action of assumpsit, begun, on April 16, 1889, in the Circuit Court of Cook County, by Amelia Beak and Alfred Bucher, late partners under the firm name of Beak & Bucher, suing for the use of Wight Bros., a firm composed of Louis Wight and J. Franklin Wight, against Sidney Guy Lea, Belden Seymour Jr., W. T. Moore, Frank Conover and Everett House, composing the firm of Lea & Co. Of the defendants, Lea and House alone were served with process; the other defendants were not found by the Sheriff. The declaration consists of the common counts only. Default was entered against Lea. The appellant, House, entered his appearance, and filed plea of general issue, with affidavit of merits. The case was tried before a jury. The only evidence introduced was produced by the plaintiffs. The jury returned a verdict of $4089.91 in favor of the plaintiffs, upon which the Circuit Court entered judgment. The Appellate Court has affirmed the judgment of the Circuit Court, and from such judgment of affirmance the present appeal is prosecuted.

Beak & Bucher were wholesale merchants in Chicago engaged in the business of manufacturing and selling furs, hats and caps. They failed in the latter part of December, 1885, and assigned their accounts to Wight Bros. They sold goods to Lea & Co. also doing business in Chicago in the months of September, October, November and December, 1885. There were two accounts kept by them of their transactions with Lea & Co. during these months, one of them of goods sold and the other of goods consigned. The account of the sales was kept in two sales-journals, known as Exhibits A and B; and the account of the consignments, was kept in a separate book, known as Exhibit C. By the books and other evidence, it was shown, that, between September 17 and December 23, 1885, Beak & Bucher consigned to Lea & Co. goods to the amount of $6832.03, upon which amount they were entitled to credits of $3097.50, leaving a balance of $3734.53; and that, between September 17 and December 17, 1885, they

sold to Lea & Co. goods to the amount of $2257.02, upon which credits to the amount of $1902.44 were due, leaving a balance of $355.38; making the entire claim, on both accounts, $4089.91. The two accounts consisted of a large number of items on both the debit and credit sides thereof.

Alfred Bucher swore, that he was the book-keeper of the firm; that Beak & Bucher sold and consigned goods to Lea & Co.; that Richard Beak was manager of the fur department and made the arrangements; that the orders for goods were sometimes given at the store of the plaintiffs, and sometimes to Richard Beak at the store of defendants; that witness made the entries on the ledger and cash-books, but not on the sales-books, or delivery books, or receipt books; that the sales-books and consignment book were kept by Lewis Henry and were books of original entry, and were made from memoranda furnished by salesmen, shippers, etc., to the invoice clerk; that the books showed the accounts and amounts above set forth; that he had checked up the charges for bills as rendered with the receipts, that is, the total of each delivery, and found the receipts to correspond.

Lewis Henry swore, that he was bill-clerk for plaintiffs during said months; that he entered the charges for goods sold; that he kept the original sales-books and the assignment book and made the entries therein; that the entries were made therein in the regular course of trade at the times when they bear date, and as a part of his duty, and were true and correct; that he always made out the invoices, which were sometimes given to the party getting the goods and sometimes sent with the driver who delivered them; that he made the entries from data furnished by Richard Beak either directly or through order-slips; that his recollection is, that he received all of the items from said Beak, but there may have been exceptions.

Richard Beak testified, that he sold goods for Beak & Bucher in 1885 and did all the business for them with Lea & Co.;

that he sold all the goods named in said entries to Lea & Co.; that the entries are correct; that the consigned goods were all agreed upon between himself and Lea; that he fixed the prices at the time of sale on all the goods as they were ordered; that he either made out order-slips for all the goods sold, or gave the items directly to Henry; that all the goods sold were entered in Exhibits A and B; that the consigned goods were entered in Exhibit C, which is in the handwriting of Henry, "and he got the data for all of the items from me;" that the items were correctly given to Henry of all goods consigned to Lea & Co.; that he used to be over at Lea's store nearly every day, and saw goods there that came from plaintiffs' store, cloaks, seal garments; that he sometimes examined the books to see whether the items on the order-slips were entered correctly; that the prices agreed upon between himself and the buyer for Lea & Co. were the market prices; that "on the consigned goods we were to get the money after they sold at price invoiced;" that he made an agreement with Lea for consigned goods at two different times; that Lea & Co. "were to pay for goods they sold when they sold them, and what was not sold they would return;" that he went to see Lea & Co. a day or two before the failure of Beak & Bucher; that he went for money and to settle their account; that he saw Lea and received a check for $1000.00 from him; that Lea had the invoices looked over; that he looked over the account himself or had his book keeper look it over; that he found no fault with the account.

Daniel D. Denna testified, that he was employed, during said four months, by Lea & Co., as inspector of goods and floor manager; he proved the signatures to receipts given by Lea & Co., or persons employed by them, for goods sold and delivered to them by Beak & Bucher during that period. These receipts gave the numbers of boxes or packages, and their values respectively, in dollars and cents. Lea & Co. were thus

shown to have received from Beak & Bucher within the period above named goods to the amount of more than $5000.00.

Charles Felcher also testified, that he drove an express wagon for Beak & Bucher during said period, and delivered to Lea & Co. at their store in Chicago boxes and packages of goods, and took receipts from them for the goods; and that the receipts named in the book shown to him were the receipts so taken; that sometimes he delivered goods to them two or three times a day; that he cannot swear to the delivery of all the goods, as another expressman would carry them when he happened to be away, and sometimes something was sent by the boys in the store.

Edward E. Gray, one of the attorneys for plaintiffs, swore that he presented the account sued upon to Lea in the latter part of December, 1885, and informed him of its assignment to Wight Bros., and told him to make payments at the office of said attorneys; that Lea took the account and said "all right;" that the books of Beak & Bucher have been in the possession of said attorneys from December, 1885, to April, 1889, and a great many statements have been made from them and they have been found correct.

Messrs. Flower, Smith & Musgrave, for the appellant.

Messrs. Weigley, Bulkley & Gray, for the appellees.

Mr. Chief Justice Magruder delivered the opinion of the Court:

It is assigned as error, that the trial court received in evidence the books of account of Beak & Bucher, showing the items of the accounts sued upon. It is claimed, that a proper foundation was not laid for the introduction of the books, and that, therefore, they should not have been admitted.

We think, that the books were properly admitted in connection with the evidence set forth in the statement of facts, which precedes this opinion. The court did not determine

the weight of the books as testimony, but simply their admissibility. It was for the jury to decide what weight should be given to them. The defendants had the right to introduce proof for the purpose of contradicting them, or showing their incorrectness, but they failed to introduce any testimony whatever; and the books, together with the other evidence which accompanied them, made a *prima facie* case.

The third section of the Act in regard to evidence and depositions in civil cases is as follows: "Where, in any civil action, suit or proceeding, the claim or defense is founded on a book account, any party or interested person may testify to his account book, and the items therein contained; that the same is a book of original entries, and that the entries therein were made by himself, and are true and just; or that the same were made by a deceased person, or by a disinterested person, a non-resident of the State at the time of the trial, and were made by such deceased or non-resident person in the usual course of trade, and of his duty or employment to the party so testifying; and thereupon the said account book and entries shall be admitted as evidence in the cause." (1 Starr & Cur. Ann. Stat. page 1076.)

This statute permits the party himself to testify to his own books. The party himself was not allowed so to testify at common law. The common law requires, that the entries in the book should be proved by the clerk or servant who made them, if such clerk or servant be alive and can be produced. (*Burnham* v. *Adams*, 5 Vt. 313.) It was necessary, in order to make the book admissible, that the entries therein should have been made in the ordinary course of business by a person whose duty it was to make them, and that they should have been made contemporaneously with the delivery of the goods, so as to form a part of the *res gestæ*. (1 Greenl. on Ev. secs. 115 to 120; *C. & N. W. R. W. Co.* v. *Ingersoll*, 65 Ill. 399.) Section 3, which was first passed in 1867, (Laws of 1867, sec. 3, page 184,) adds to and enlarges, but does not

repeal, the common law rule. A contrary statement made in *Presbyterian Church* v. *Emerson*, 66 Ill. 269, was mere *dictum*, and not necessary to the decision of the case. It was not the intention of the statute to prohibit the introduction in evidence of books of account kept by a clerk, when such clerk is living in the State and is able to testify to the correctness of the books.

In *Taliaferro* v. *Ives*, 51 Ill. 247, we said that this statute of 1867 did not materially change the rule announced in *Boyer* v. *Sweet*, 3 Scam. 120. It was held in the latter case, that the rule in England, which allows the books of a tradesman to be introduced in evidence when they are supported by the oath of the clerk who made the entries, was the rule also in this State. · (See also *Ruggles* v. *Gatton*, 50 Ill. 412.)

In *Kibbe* v. *Bancroft*, 77 Ill. 18, we again held, that the statute of 1867 did not materially change the existing rule as to the admission of books of account in evidence, but merely permitted an interested witness to testify to all the facts, the proof of which had theretofore been decided to be necessary, in order to lay a foundation for the admission of the account books.

The existence of the common law rule, which permits the clerk, who has kept the books, to testify, was again recognized in *Stettauer* v. *White*, 98 Ill. 72.

In a number of cases, we have held, that there are certain limitations upon the rule permitting such books of account to be introduced in evidence. In *Boyer* v. *Sweet, supra,* where the party kept the books himself, the books of original entries were held to be admissible to sustain an account composed of many items, upon proof being made that some of the articles were delivered at or about the time the entries purported to have been made; that the entries were in the handwriting of the party producing the books; that he kept no clerk at the time; and that persons having dealings with him had settled by the books, and found them to be fair and correct.

In *Humphreys* v. *Spear*, 15 Ill. 275, the same state of facts was shown to exist as in *Boyer* v. *Sweet*, except that the books were kept, not by the tradesman himself, but by his clerk; the clerk was introduced as a witness and gave evidence tending to show the correctness of the account; and we there said: "It is very clear that the books were admissible in evidence in connection with the testimony of the clerk. It is well settled in this country, that entries made by a clerk, in the regular and usual course of business, are admissible in evidence after his death on proof of his handwriting; *and during his life, if authenticated by him.* Such entries form part of the *res gestæ*, and are admissible as original evidence. * * * If it appears that some of the goods were delivered contemporaneously with the entries made by the clerk, and that the books were fairly and honestly kept, the jury may reasonably conclude that the entire account is correct." (See also, *Lawrence* v. *Stiles*, 16 Brad. 489.) The doctrine of *Humphreys* v. *Spear* was not changed by the statute of 1867.

. In *Stettauer* v. *White, supra*, it was held, that, where the clerk who makes the entries has no knowledge of their correctness, but makes them as the items are furnished by another, it is essential that the party furnishing the items should testify to their correctness, or that satisfactory proof thereof, (such as the transactions were reasonably susceptible of,) from other sources should be produced. It is to be observed that, in the *Stettauer* case, there was no evidence except the carrier's shipping receipt, that any portion of the articles had been delivered. In *Kent* v. *Garvin*, 1 Gray, 148, one of the cases upon which the *Stettauer* case is based, the failure "to show that at the time the charges were made, any articles, similar in character to those charged, were delivered by the plaintiff to the defendant" is commented upon as significant.

In the case at bar, there is evidence that, of the goods described in the accounts, an amount exceeding in value $5000.00 was delivered to the defendants; and not only does

Henry, who kept the books of original entries, swear to their correctness; but, in addition to this, Richard Beak, who furnished the items to Henry, testifies to the correctness of the items.

The proof establishes all the facts necessary to bring the present case within the requirements of the cases of *Boyer* v. *Sweet, Humphreys* v. *Speer, Ruggles* v. *Gatton,* and *Stettauer* v. *White, supra,* except as to one matter. We find no evidence by any customer of Beak & Bucher, that he settled with them by their books and found them correct. (*Ingersoll* v. *Banister,* 41 Ill. 388.) The failure of the proof, however, in this regard would not have justified the exclusion of the books in view of the facts, that the defendants paid $1000.00 upon the account late in December without questioning it, and accepted a statement of the account, as assigned, with the remark that it was "all right," and, although more than three years elapsed after the account was presented before suit was brought, during which time many applications were made to them or some one of them for payment, they at no time ever urged any objections to the correctness of the account. A careful examination of the authorities hereinbefore referred to will show, that, before the statute of 1867 was passed, testimony from third persons, as to settlements made by the books, was more especially required in cases where the tradesman had no clerk, but kept his own books. In such cases, the party testifying to the correctness of the books being interested, it was held that his testimony should be supported by that of customers who had settled by the books. (*Boyer* v. *Sweet, supra; Ingersoll* v. *Banister, supra; Ruggles* v. *Gatton, supra; Waggeman* v. *Peters,* 22 Ill. 42.)

It is further assigned as error, that the court refused to instruct for the defendants as follows: "The jury are instructed that as to the claim of plaintiffs for goods claimed to have been *consigned* by plaintiffs to defendants, there is no sufficient evidence to support a verdict," etc. The point is made, that

a portion of the goods was consigned to the defendants to be paid for when sold, and to be returned if not sold, and that an action of assumpsit on the common counts cannot be maintained to recover for the goods so consigned, because there is no evidence of their sale by the defendants, or of a demand for their return by the plaintiffs.

Under the proofs in this case, the goods in question were not consigned to the defendants to be sold by the latter as agents of the plaintiffs, but the agreement between the parties was what is known as a contract "on sale or return." "A contract 'on sale and return' is an agreement, by which goods are delivered by a wholesale dealer to a retail dealer to be paid for at a certain rate, if sold again by the latter; and if not sold to be returned." (Story on the Law of Sales, sec. 249.) If the vendee returns the goods, the contract of sale is at an end; if he does not, the sale becomes absolute, and the price of the goods may be recovered in an action for goods sold and delivered. If no time is specified within which the return is to be made, the law implies that they are to be returned within a reasonable time. What is a reasonable time will depend upon the circumstances of each case. (Idem.) In such cases, the property in the goods passes to the purchaser subject to an option in him to return them within a fixed or reasonable time; the price is fixed at the time of the sale and delivery of the goods; the purchaser deals with the goods as his own, disposes of them as he pleases for cash or on credit, is under no obligation to give any account of his disposition of them, and is only liable to pay for them at a price fixed beforehand, without any reference to the price at which he sells them. (*Jameson* v. *Gregory*, 4 Metc. (Ky.) 363; *In re Linforth*, 4 Sawyer, (U. S. C. C. Rep.) 370; *Ex parte White in re Neville*, Law Rep. 6 Chanc. App. 397.

In *Moss* v. *Sweet*, 3 Eng. Law and Eq. Rep. 311, where goods were delivered to the defendant to sell again, upon his agreement to account for such as were sold at the invoice

price, with an option to return the residue within a reasonable time, and where he sold a portion but failed to return the rest; it was held that his failure to return rendered him liable as upon an absolute sale, and to an action for goods sold and delivered.

The bargain, called "sale or return," means "a sale with a right on the part of the buyer to return the goods at his option within a reasonable time, and * * * the property passes; and an action for goods sold and delivered will lie, if the goods are not returned to the seller within a reasonable time." (2 Benj. on Sales,—6 Am. Ed.—sec. 913, page 794.)

Such sales may be regarded as subject to a condition subsequent, that is, upon condition that, if the goods are not sold, they are to be returned. Therefore, the property vests presently in the vendee, defeasible on the performance of the condition. If the defendant disables himself from performing the condition, or fails to perform it within a reasonable time, his liability to pay the price fixed becomes unconditional, and the plaintiff may declare as upon an *indebitatus assumpsit*. (*Ray* v. *Thompson*, 12 Cush. 281.)

These definitions of a contract "on sale or return" fit the facts in the case at bar. The prices were fixed upon the goods when they were ordered. The consigned goods were to be paid for when sold at the prices invoiced, and such as were not sold were to be returned. As no time for the return was fixed, a reasonable time was implied. The defendants kept the goods for more than three years without offering to return them, and accepted itemized accounts of them without objection. Demands were frequently made upon them to pay for the consigned goods, and, if such goods were unsold at the dates of such demands, offers should have then been made to return them. Under the circumstances, we think the defendants failed to exercise their option within a reasonable time, and are liable as upon an absolute sale. There was therefore no error in refusing the instruction.

The cases of *Creel* v. *Kirkham*, 47 Ill. 344, and *Johnston* v. *Salisbury*, 61 id. 316, have no application here, as in those cases there was no sale of the personal property by a vendor to the vendee so as to vest the title thereto in the latter at the time of delivery. Nor do we think that the case of *Jones* v. *Wright*, 71 Ill. 61, conflicts with the doctrine here announced. It was there said, that the arrangement was, in legal effect, a sale with the privilege of returning the property when the buyer should choose to make such return, *or on the demand of the seller.* The buyer may make himself liable to pay the price fixed in the agreement by refusing to return the property upon demand made for it by the seller; but, if the seller does not want the property and makes no demand for it, it is none the less true that the buyer will become liable to pay the price fixed, upon failing to return the property within a reasonable time. In the present case, demands made for the price of the consigned goods, unanswered by either the payment of the money or an offer to return the goods, amounted substantially to such a refusal to surrender on demand, as was held to be sufficient in the *Jones case.*

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*