SAMUEL S. CHISHOLM *et al. v.* THE BEAMAN MACHINE CO.

and

SAMUEL S. CHISHOLM *et al. v.* OSWALD KUTSCHE.

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

1. EVIDENCE—*books of account—admissibility in a given case.*   Books of account showing entries for time of workmen are admissible in evidence against a party who, by special contract, was to pay the expense of such work, though such entries were made the day after the work was done, from time-slips made by the workmen and marked "approved" by the foremen, who testify to their correctness, while the men who made the entries on the books testify the slips were correctly copied.

2. SAME—*when book entries are deemed part of res gestæ.*   The rule that entries in account books, to be admissible, should be made as part of the *res gestæ*, is satisfied when entries were made on the day after the work was done, from time-slips made by the workmen themselves when the work was done, and approved by foremen on the following morning.

3. SAME—*effect of rejection of some items in books of account.*   Account books are not discredited, for the purpose of evidence, by the fact that some entries are made therein for items which cannot be allowed by the court, if there is nothing to indicate that they were fraudulently or dishonestly made.

4. CUSTOM—*contracts presumed to be made with reference to.*   Contracts are presumed to be made with reference to an existing custom relating to the trade in which they are made, if they are made in the ordinary course of business, without stipulations which exclude such custom.

*Chisholm* v. *Beaman Machine Co.* 57 Ill. App. 344, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

In these cases there is a stipulation, in pursuance of which the two causes were heard together in the trial court before the judge without a jury, and one bill of exceptions filed in one of the causes was considered as filed in the other.   By the stipulation the causes were heard

together in the Appellate Court; and it is also agreed, that they shall be heard together in this court as one cause, and that one printed abstract shall be sufficient for both. Both are actions of assumpsit against the appellants, Samuel S. Chisholm, James A. Boyd and B. Clark White, trading as Chisholm, Boyd & White. The declaration in the first case, *The Beaman Machine Co.* v. *Samuel S. Chisholm et al.*, contains the common counts only. The copy of the account sued upon shows items for work done and materials provided on certain parts of certain machines, beginning May 6, 1890, and running down to December, 1890. The declaration in the second case, *Oswald Kutsche* v. *Samuel S. Chisholm et al.*, contains, besides the common counts, a special count upon a bill of exchange, dated October 2, 1890, drawn by the plaintiff, Oswald Kutsche, who was the president of the Beaman Machine Company, upon the defendants, Chisholm, Boyd & White, for $1824.00 with interest at six per cent per annum, payable sixty days after date to order of plaintiff, and accepted by said defendants. This draft or bill of exchange was given in part payment for work and materials done and furnished to and upon the same machines referred to in the copy of the account sued upon in the first suit. The special pleas in the second action allege, that the said company, of which Kutsche was president and manager, agreed to do certain work and furnish certain materials in the construction of five brick machines for the defendants, and that the latter agreed to pay the company at the rate of a certain sum per hour for the work of each man employed by the company in such construction, and at a certain rate per pound for certain materials; that the company represented that it had done so much work, etc., and defendants gave the draft upon account, but that such representations were false, and that the company did not deliver the machines to the defendants, etc.

The trial judge found the issues for the plaintiff in each case, rendering judgment in the first case for $1974.72, and in the second for $2144.56. The Appellate Court has affirmed the judgment in the second case for $2144.56, being the amount of the draft and interest, but required the plaintiff to remit $407.34 in the first case, and, said amount being remitted, entered judgment for $1567.38.

The proof shows, that, after some oral negotiation between the parties, the defendants submitted to the company the following written proposition:

"CHICAGO, *April 30, 1890.*
"*The Beaman Machine Co., 55th and Stewart Ave., Chicago:*

"GENTLEMEN—Please make the following castings for us from our patterns furnished herewith, viz.: Five (5) pulley shaft stands, pattern No. 304; ten (10) crank shaft caps, pattern No. 405. (The document proceeds to enumerate a large number of parts designed to form portions of five four-mold brick presses, and continues as follows): The above castings to be finished and fitted as per drawings and specifications furnished. Please make with the above the following wrought-iron steel pieces, finished and fitted as per drawings and specifications. (Here follow the enumerations of portions of five four-mold brick presses. The document then proceeds as follows): We will supply the following parts, which please finish when necessary, as per our drawings: (Then follows an enumeration of a number of the necessary parts for five four-mold brick presses.) All of the above mentioned pieces to be finished and fitted as per our drawings and specifications.                CHISHOLM, BOYD & WHITE.

"P. S.—We will also furnish the following castings for pieces No. 401, 302, 303, 410, 319, which you will please finish, where necessary, as per drawings. We will also furnish cam castings No. 351, 352, 353, finished and fitted to gears."

To this proposition the company sent the following written reply:

"CHICAGO, *May 1, 1890.*

"*Messrs. Chisholm, Boyd & White, Adams Express Bldg., City:*

"GENTLEMEN—We agree to furnish you material and labor for five four-mold brick machines as follows, viz.: Machinists, 50 cents per hour; helpers, 25 cents per hour; pattern-makers, 50 cents per hour; blacksmiths, 80 cents per hour; castings, $2\frac{3}{4}$ cents per pound (without labor); brasses, ........; iron forging, $3\frac{1}{4}$ cents per pound (without labor); hammered steel shafting, $4\frac{1}{4}$ to $4\frac{1}{2}$ cents per pound; rolled steel shafting, 3 to $3\frac{1}{4}$ cents per pound.

"Very truly yours,

BEAMAN MACHINE COMPANY,

J. M. JOHNSON, *Secretary.*"

JESSE COX, for appellants:

The rule with regard to the admission of books of account in Illinois, prior to the enactment of the statute of 1867, is stated in *Dodson* v. *Sears,* 25 Ill. 513.

The rule is not altered by the statute of 1867, except in cases where the entries were made in the books by a deceased person or by a disinterested person, a non-resident of the State at the time of the trial, and were made by such deceased or non-resident person in the usual course of trade and of his duty or employment to the party so testifying. Hurd's Stat. 1893, p. 716, sec. 3.

The fact that these entries were made by men who, though in law disinterested, had no knowledge of the correctness of the charges which they made, could not help these books as evidence. *Stettauer* v. *White,* 98 Ill. 72.

Books were admissible, if at all, at common law, when made by the party in interest, only because they were made by an interested person who had knowledge of the transaction recorded in the books, and who could not be a witness because disqualified. *Dodson* v. *Sears,* 25 Ill. 513.

If the entries were made by a disinterested person, such entries and books were not admissible in evidence

at all, unless such disinterested person who made the en-
tries had a knowledge of the transactions so entered, and
could be called to testify to the correctness of them.
*House* v. *Beak*, 141 Ill. 297; *Humphreys* v. *Spear*, 15 id. 275;
*Stettauer* v. *White*, 98 id. 72.

A witness is allowed to refresh his recollection from
some writing which he has made himself at the time of a
transaction, but unless the witness, after looking at the
writing, can testify to the truth of the matters therein
contained, independently of the writing and from his own
recollection, his testimony is not admissible.    *Elston* v.
*Kennicott*, 46 Ill. 206; *Railroad Co.* v. *Adler*, 56 id. 344.

A book made by a disinterested person, to be admis-
sible in evidence as an account book, must contain an
entry of transactions as they occur in the regular order
of business.    The entries must be made contemporane-
ously with transactions they are supposed to represent.
*Humphreys* v. *Spear*, 15 Ill. 276 ; *Bayer* v. *Sweet*, 3 Scam. 120;
*Ruggles* v. *Gatton*, 50 Ill. 412; *House* v. *Beak*, 141 id. 290.

If entries are not made as transactions occur the book
is inadmissible.    *Treadway* v. *Treadway*, 5 Ill. App. 478.

Books of account are the very lowest species of evi-
dence, and are admitted, if at all, only when they are ab-
solutely free from suspicion of fraud or wrongdoing, and
are shown to have been fairly and honestly kept.    *Hum-
phreys* v. *Spear*, 15 Ill. 275 ; Rice on Evidence, 830, 832 ;
*Dodson* v. *Sears*, 25 Ill. 513.

Trade usages cannot alter rules of evidence.    *Oldershaw*
v. *Knoles*, 4 Ill. App. 63; *Lonergan* v. *Stewart*, 55 Ill. 44.

FARSON & GREENFIELD, and D. J. SCHUYLER, for ap-
pellees :

Charges first made upon a slate and then transferred
to the books as items of original entry are admissible in
evidence.    *Redlich* v. *Bauerlee*, 98 Ill. 137.

A book in which the entries are taken from memoranda
is competent evidence as a book of original entries.    *Inger-*

*ham* v. *Bockins,* 9 S. & R. 286 ; *Moores* v. *Bugs,* 3 Cush. 342 ; *Patton* v. *Ryan,* 4 Rawle, 410; *Tilkins* v. *Baker,* 6 Lans. 518.

The original entries in a book of account are competent evidence if the person making them testifies that the entries therein made are correct, even though it appears that he has no recollection of the transaction independently of the entries in the book. *Lawrence* v. *Stiles,* 16 Ill. App. 489.

The fact that it appears that a part of the entries made in a book of account are not original entries, or entries which could not properly be offered in evidence, does not affect the admissibility of other entries in the same book which are proved to have been properly made. *Wollenweber* v. *Ketterlinus,* 17 Pa. St. 389.

Entries in the books of the opposite party are competent evidence against them, and such party cannot be heard to find fault with the manner in which the books have been kept, for the purpose of avoiding their effect as evidence. *Lowenthal* v. *McCormick,* 101 Ill. 144.

The ledger of the opposite party, though not a book of original entries, is competent evidence against such party as an admission on their own books of the amount due on the account. *Dows* v. *Naper,* 91 Ill. 44 ; *Alling* v. *Wenzell,* 27 Ill. App. 511.

The appellants having adopted the bills rendered by the plaintiff from time to time, should be estopped to deny the same. *People* v. *Brown,* 67 Ill. 435.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

These cases were tried by agreement before a judge of the Superior Court of Cook county without a jury. No. propositions were submitted by either side to the trial court to be held as law in the decision of the case. There is, therefore, no question before us for our consideration, except the question hereafter mentioned as to the correct-

ness of the ruling of the trial court in the admission of certain evidence. (*Bank of Michigan City* v. *Haskell*, 124 Ill. 587). Upon all other points, we must assume that the trial court ruled the law correctly, and the decision of the Appellate Court conclusively determines that it ruled the facts correctly. (*Miller* v. *People*, 156 Ill. 113; *Bank* v. *LeMoyne*, 127 id. 253).

Upon the trial below, the plaintiffs were permitted to introduce in evidence the books of account of the Beaman Machine Company over the objection of the defendants, to which ruling exception was duly taken.

The evidence shows the following mode of keeping account of the time spent in work upon the machines: Each workman at the end of each day made out a time-check or slip in his own handwriting, stating therein the number of the piece he had worked upon and the number of hours he had worked thereon during the day; at the close of the day he dropped this time-slip into a locked box, arranged like a letter-box, in the tool-room of the shop; the next morning the foreman of the shop took these time-slips out of the box, checked them over, went to see the workman who made the slip if anything was wrong about it, marked the slips, "approved," which were found to be correct, and then turned them over to the book-keeper in the usual way; the book-keeper on the same day, or the following day, made a transcript of these tickets or time-slips into a book called the time-book, the entries therein showing the number of the piece of machinery worked upon, the name of the workman and the amount of the time. During the time when the work was done upon these brick machines from the early part of May, 1890, to the early part of December, 1890, the entries in the time-book were made by two book-keepers. When the books were introduced, these book-keepers were placed upon the stand and swore, that the entries in the time-book were correct; that such entries were a correct transcript of the tickets, and for the work done

in the shop, as shown by the tickets; that the entries were made from the tickets made out by the men in the shop, and generally handed to the book-keeper by the foreman the next morning; that the tickets were examined by the book-keepers, and, when any errors were found, they were corrected by the foreman and the book-keeper before the entries were made in the book.

The foremen, who had charge of the workmen during the progress of the work upon the machines, and who examined and approved of the tickets or time-slips, were also put upon the stand, and swore to their signatures upon the time-slips; that they had looked them over, and had superintended the men, and had had charge of their work; that the tickets, turned in for the work, as signed and approved by them, were correct, and correctly represented the time; and that the work specified on the tickets was done.

Some 5000 of these original tickets were brought into court during the trial of the cases below, and it sufficiently appears that they were considered as being introduced in evidence. One of the foremen testified, that he had examined them all carefully on the morning of the day on which he testified. Before the trial they were carefully examined by the book-keeper of appellants in the presence of the book-keeper of appellees; and a short time before the trial, Kutsche, the president of the machine company, and Molliter, one of its book-keepers, checked over the entries in the time-book from the tickets, and found only about ten entries, out of some 5000, for which there were not corresponding tickets.

It appears from the evidence, that the foremen, or superintendents employed by the machine company, not only superintended the workmen but actually worked with them upon the machines during their construction, thus having an opportunity to see what work was done. Entries were made upon the time-book of the work thus done by the foremen, but these entries amounting to more

than $1400.00 were excluded by the trial court from the amount claimed by the plaintiffs below, on the ground that the contract did not provide for any payment for the time of the foremen.

The appellants had in their service a superintendent named Reverette, who had superintended the construction of at least one hundred brick presses for them; and, by arrangement between the parties, Reverette went to the shop of appellees, and watched the progress of the work, and had a general oversight over it; and it was his duty to see that the work was properly done. He was there two or three days in each week, and consulted with the foremen, and gave directions, but made no complaint to appellees as to the time of the workmen, or as to the mode of doing the work, and accepted the machines when completed.

There was evidence, introduced by the appellants themselves, tending to show, that the custom in machine shops where such brick presses were constructed, was to provide the men with time-slips for the entry thereon of their time, and to have the same approved by the foremen, and entered by the book-keepers, in the same way which was adopted by the appellees as above stated.

The proof shows, that the cost of the five machines, according to the bills presented by appellees to appellants, was more than $10,000.00, and that appellants paid from time to time more than $5300.00 upon these bills, besides giving the bill of exchange for $1824.00, which was not paid and went to protest. One of the bills for over $2000.00 was presented in June, and another for over $3000.00 in August. Bills were afterwards rendered from time to time; no objections were made to them, although the book-keeper of appellants several times stated to appellants that he considered the bills rather large; and, upon the receipt of them, appellants entered them in their books, first in the day-book as invoices received, giving dates and amounts, and then carrying

the entries through the journal to the ledger. Between September 2 and October 2, 1890, the book-keeper of appellants balanced the account upon their own ledger, and showed a balance of over $4000.00 due at that time to appellees.

Three of the machines were delivered to the appellants. When the last two machines were finished and ready for delivery, the appellants were notified of that fact, but the president of the machine company demanded payment of the balance due upon the account before surrendering the possession of the machines. The evidence tends to show, that appellants then made no objection to the amount claimed, but stated that they had no money, and that, if they were allowed to have the machines, they would sell them and pay for them out of the proceeds of the sales. Subsequently, appellants replevied the two machines from the appellees.

We think, that the books were properly admitted in evidence in connection with proof of the facts and circumstances already detailed. Their mere admission was not a determination of the weight to which they were entitled as evidence, and it was the privilege of the appellants to attack their reliability by any legitimate testimony tending to show their incorrectness.

It is claimed by the appellants, that the workmen who did the work on the machines and made out the time-slips, should have been produced and asked whether they actually worked as many hours as were indicated upon the slips. This certainly would have been the best evidence upon the subject, but it is easy to see, that, upon the trial of a case like this occurring long after the transactions denoted by the entries, it might not be possible to find the men who made the slips. The books themselves were accompanied by the testimony of the book-keepers who made the entries that such entries were correctly made from the time-slips, and by the testimony of the foremen, who superintended the work as done and did a part of it

themselves, that the time-slips were correct, and that the work represented thereby was actually done.

The entries in the account book, or book of original entries, may be proved by the clerk who made them, if he is alive and can be produced. In order to make the book admissible, it is necessary that the entries therein should have been made in the ordinary course of business by a person whose duty it was to make them, and that they should have been made contemporaneously with the doing of the work, for which the charges are made, so as to form a part of the *res gestœ*. (*House* v. *Beak*, 141 Ill. 290). The time-slips were made on the day the work was done so far as they were made by the workmen, and on the morning after the work was done so far as they bore the signatures and marks of approval of the foremen; and they were transcribed into the time-book, as a general thing, on the day after the work was done. Whether, therefore, the time-book or the time-slips be regarded as containing the original entries, they were made so near the time of the actual performance of the work as to be justly regarded as forming a part of the *res gestœ*. It must be remembered, that the time-slips were examined and compared by the foremen, and were marked, "approved," by them, and contained their signatures, and, to that extent, were made as much by them as by the workmen. The time-slips not only contained memoranda made by the workmen, but also memoranda made by the foremen. Hence, there was testimony by the parties making the time-slips, as well as by the parties making the entries in the time-book.

Where the clerk, who makes the entries, has no knowledge of their correctness, but makes them as the items are furnished by another, it is essential that the party furnishing the items should testify to their correctness, or that satisfactory proof thereof—such as the transactions are reasonably susceptible of—from other sources should be produced. (*House* v. *Beak, supra*). Here, the foremen,

who furnished the items to the book-keepers, testified to their correctness. If their knowledge of the work done was not as full and complete as the knowledge of the workmen themselves, yet, as they superintended the doing of the work and participated in its performance, their testimony was such satisfactory proof of the correctness of the items as the transactions were reasonably susceptible of.

Besides the requirement, that the entries should have been made in the usual and regular course of business, in order to justify the admission of the books, it is also necessary that the books should have been fairly and honestly kept. (*House* v. *Beak, supra*). It is claimed, that the books introduced in this case did not meet these requirements, because some entries were made therein for which there were no corresponding time-slips, and because some entries of a later date preceded others of an earlier date. The testimony explained this matter in such a way, that the facts referred to cannot be regarded as discrediting the books. In order to complete the machines as early as possible, the foreman and an assistant-foreman worked upon the machines as ordinary machinists. No charge was originally made upon the books for the time thus spent in work by the foremen, but afterwards it was concluded, that charges should be made for this work upon the ground that it was work upon the machines, and not the ordinary work of supervision and superintendence done by foremen; and, consequently, entries were made upon the books representing this kind of work. All these entries, however, were stricken out by the lower courts, and are not embraced in the judgments brought here for review.

We see nothing to indicate that these entries were fraudulently or dishonestly made, although made somewhat out of the regular order. There is evidence tending to show, that such charges were honestly believed to be legitimate and proper. It is not necessary for us to

determine whether they were properly excluded or not, no cross-errors being assigned as to them. The fact, that a book of account introduced in evidence contains some entries which are not original entries, forms no objection to receiving the book as evidence of other entries which are regularly made, it appearing that the entries generally have been made at proper times. (*Wollenweber* v. *Ketterlinus*, 17 Pa. St. 389).

It is also urged, that, where a plaintiff relies upon his own book of accounts composed of many items, it must appear that some of the goods were delivered contemporaneously with the entries made by the clerk, and that persons dealing with the plaintiff had settled by the books and found them correct. (*House* v. *Beak, supra*). If the requirement as to deliveries of goods has any application to charges for amounts of work done on particular machines under a special contract, it may be said that much of the time indicated by the entries in the time-book here is proven to have been actually spent in work upon the brick machines. It is not seriously denied that the entries represent work actually done, but it is claimed that more time was consumed in the making of the machines than was necessary. It also appears, that bills for work done upon these machines to the amount of more than $5300.00, which bills were mere transcripts from the books of appellees, were settled and paid by the appellants, who thereby recognized the correctness of the entries to the extent of such payments.

It appears here, that the appellants themselves were manufacturers of the kind of brick machines which they employed appellees to construct. They must be presumed to be familiar with the usual course of business in such occupations. While usages of trade cannot be set up to contravene established rules of law, or to vary the terms of an express contract, yet all contracts made in the ordinary course of business, without particular stipulations express or implied, are presumed to be made in reference

to any existing usage or custom relating to such trade; and persons, dealing therein, will be held as intending, that the business should be conducted according to such general usage and custom. (*Lonergan* v. *Stewart*, 55 Ill. 44; *Samuels* v. *Oliver*, 130 id. 73; *Chicago and Northwestern Railway Co.* v. *Ingersoll*, 65 id. 399; 1 Greenleaf on Evidence, —15th ed.—secs. 115-117, 120, 292; *Barnard* v. *Kellogg*, 10 Wall. 383).

Where there is original evidence that laborers were employed, and that their time was correctly reported by persons having personal knowledge of the facts, and that these reports were made in the ordinary course of business, and in accordance with the duty of the persons making them, and in point of time were contemporaneous with the transactions to which the reports related; and where this original evidence is combined with proof by the person receiving the reports, that he correctly entered them as reported in the time-book in the usual course of his business and duty, the entries so made are admissible as evidence to show the amount of work done. (*Mayor of New York* v. *Second Avenue Railroad Co.* 102 N. Y. 572; *In re McGoldrick* v. *Traphagen*, 88 id. 334; *Little Rock Granite Co.* v. *Dallas County*, 66 Fed. Rep. 522; *Redlich* v. *Bauerlee*, 98 Ill. 134).

In a recent case, where the action was for work done, the time-cards of plaintiff's workmen were held to be admissible, where the foreman who made them stated that it was a part of his duty; that each day he noted the time of each man on a slip of paper, and on the next morning transcribed the time from the slips to the time-cards, and destroyed the slips; and that the time entered on the slips was correct, and was correctly transcribed on the cards. (*Van Wie* v. *Loomis*, 28 N. Y. Sup. 803; *Redlich* v. *Bauerlee, supra*).

The judgments of the Appellate Court are affirmed.

*Judgment affirmed.*