(No. 21347.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES GUALANO *et al.* Plaintiffs in Error.

*Opinion filed June 24, 1932.*

R. H. RADLEY, and VICTOR P. MICHEL, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error, James Gualano and Jack Warren, bring here for review the record of their indictment, trial, conviction and sentence to the penitentiary by the criminal court of Cook county.

The indictment consisted of three counts, the first charging larceny as bailee, the second, embezzlement, and the third, larceny. The property taken was in each count alleged to be one certificate of stock of the value of $3000, two certificates of stock of the value of $1400 each, two certificates of stock of the value of $700 each, three certificates of stock of the value of $1500 each, and three certificates of stock of the value of $500 each, the property of LeRoy Horton. A plea of not guilty was entered. A jury trial was waived and the cause heard by the court. At the conclusion of the People's evidence a *nolle prosequi* was entered as to the embezzlement and larceny counts. The

trial resulted in a finding by the court that plaintiffs in error were guilty of larceny as bailees in manner and form as charged in the indictment, with the further finding that the value of the property stolen was $6403.50. They were thereupon sentenced to be confined in the penitentiary for the crime "of embezzlement in manner and form as charged in the indictment."

Many assignments of error are made upon the record, but in the view which we take of this case it is only necessary for us to discuss and pass upon the assignment that the finding of guilty by the court below is contrary to the law and the evidence.

Plaintiffs in error, Gualano and Warren, were, respectively, president and vice-president of Hamilton King & Co., a corporation, which was engaged in dealing in stocks and bonds, with an office at 309 South LaSalle street, Chicago, during the summer of 1929. On July 23, 1929, Horton entered into a written contract with Hamilton King & Co. for the purchase of 50 shares of radio stock at 81¾, the amount of the purchase being $4097.50, and gave his check for $1000 in part payment therefor. By the terms of the written contract the title to the stock was to pass to Horton and delivery to be made to him within ten days after the receipt by Hamilton King & Co. of the final payment. This contract, among other things, contained the following:

"It is agreed between the customer and the undersigned dealers (a) that all orders are good until canceled, unless otherwise stipulated; (b) that all orders for the purchase or sale of securities are received subject to the rules and customs of the market or exchange (and its clearing house, if any,) where traded in and with the distinct understanding that actual delivery is contemplated; (c) that all securities purchased or received for the customer's account, as collateral or otherwise, may be lent by the dealers or may be used by them in making deliveries or substitutions in

their business, and may be pledged by them, either separately or together with other securities, either for the sum due thereon or for a greater sum, or may be sold at public or private sale, at our discretion, at prevailing market prices, all without further notice to the customer and with his consent, which is hereby specifically given; (d) that the dealers may, whenever in their judgment it appears necessary for their protection, close out the customer's account by buying or selling any securities therein, at public or private sale, without any further notice to the customer. This contract is made subject only to the terms, prices and conditions hereinabove set forth, and no statements, representations or guaranties made by any person, agent or representative of the parties hereto shall be considered as binding except as above set out or unless contained herein."

Horton called Hamilton King & Co. by telephone and as a result of the conversation entered into another written contract with the corporation on July 26, 1929, for the purchase of 150 additional shares of radio. This contract contained the same provisions as the former, except that it was for 150 shares instead of 50. At the time of the second purchase of radio stock Horton had no money and deposited with Hamilton King & Co. a certificate for 50 shares of Time-O-Stat Control Company stock, a certificate for 50 shares of Community Telephone Company stock and a certificate for 100 shares of Missouri Kansas Pipe Line stock. He testified that "the certificates were to be credited to my account." He made no further payment to Hamilton King & Co., and on August 7, 1929, he owed the corporation $18,052. On that day Hamilton King & Co. sold the Missouri Kansas Pipe Line, Time-O-Stat and Community Telephone stock, through Harris & Co., for $6403.50, which was at that time the fair value of the stock. The proceeds of this sale were received by Hamilton King & Co. and deposited by it in the Union

Bank of Chicago and credited to the account of Hamilton King & Co. After these stocks were sold, crediting Horton with this amount, he still owed Hamilton King & Co. upon his written contracts for the purchase of radio stock $11,648.50, which was unsecured. On August 20, 1929, Hamilton King & Co. purchased from Horton his interest in 100 shares of the radio stock, and a few days later his interest in the remaining 100 shares of stock, at a paper profit to Horton of $1263.25. The sale of the Missouri Kansas Pipe Line, Time-O-Stat and Community Telephone stock certificates by Hamilton King & Co. through Harris & Co. is the only basis in the evidence for plaintiffs in error's conviction of the crime of larceny as bailee.

To constitute the offense of larceny as bailee there must be a bailment and the relationship of bailor and bailee must exist. When the identical thing delivered is to be restored in the same or an altered form the contract is one of bailment and title to the property remains in the bailor, but when there is no obligation to restore the specific article and the receiver is at liberty to return another thing of equal value or the money value he becomes a debtor to make such return and the title to the property by such transaction passes to him. (*People* v. *Wildeman,* 325 Ill. 99, and cases there cited.) Taking the evidence in this case, with all the reasonable intendments therefrom, in the aspect most favorable to the State, it shows that plaintiffs in error were not guilty of the crime of larceny as bailees and the trial court should have so found.

The judgment of the criminal court is reversed.

*Judgment reversed.*