The People of the State of Illinois, Defendant in Error,
v. Milton Feldstein, Plaintiff in Error.

Gen. No. 36,935.

Opinion filed December 11, 1933.

BERNARD J. BROWN, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, J. ALBERT WOLL and HENRY E. SEYFARTH, Assistant State's Attorneys, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendant, charged with larceny as bailee, was found guilty by a jury and sentenced to imprisonment for one year in the house of correction and fined $1; he seeks a reversal.

The case involves transactions between Stein & Ellbogen Company, dealers in jewelry and diamonds, and the defendant, in which certain diamonds were delivered to him, which the State alleges were delivered to him as bailee and which he feloniously stole. The statute says: "If any bailee of any . . . property shall convert the same to his own use, with intent to steal

the same, . . . he shall be deemed guilty of larceny." Ch. 38, ¶ 388, Criminal Code (Cahill).

Both Stein & Ellbogen Company and the defendant are in business in Chicago. The defendant sets stones in rings and other jewelry; he also bought diamonds. Some five consignments of diamonds were made by Stein & Ellbogen to the defendant; the printed memo. in each consignment reads as follows:

"On Consignment

STEIN & ELLBOGEN COMPANY

Importers and Wholesalers of

Watches and Jewelry

Cutters and Importers of Diamonds

55 East Washington Street

Chicago 10/25 1929

To Leo Feldstein Sons

City.

The goods itemized, described and priced below are sent to you for examination only, to be held by you at your risk of loss or damage, however caused and are to be returned on demand, it being distinctly understood that the title to said goods remains vested in Stein & Ellbogen Company. Should you desire to purchase any of these goods, no sale or contract to sell shall be consummated until Stein & Ellbogen Company has approved of your selection and sent you a regular bill for the goods selected. The signing or acceptance of this memorandum is an acceptance of all the foregoing terms.

To AVOID ERRORS IN REPORTING ON MEMO. GOODS PLEASE ENCLOSE LIST OF ARTICLES KEPT"

The above is a printed form. Following this, in the first consignment, is written:

"340    1 Brill    1.87 @ 425.00 per ct.    3% for cash"

Although the meaning of the word "Brill" is questioned somewhat we will assume it means a diamond.

The other consignments were upon the same printed form, followed by writing describing the diamonds consigned, with the price; in all of them except the first the terms named were "Net Cash."

Stein & Ellbogen Company had for a number of years done business with Leo Feldstein Sons, defendant's firm, sending it diamonds to be set. Sometimes defendant bought stones from Stein & Ellbogen, which were paid for according to the terms stated.

Charles Ellbogen, president of Stein & Ellbogen Company, testified for the State that the writing on the first consignment meant that the stone could be purchased for $620, and "3% for cash" meant that this discount would be allowed if the stone was paid for by the tenth of the following month; that sometimes they would give the customer an extra week or two to pay; that where the terms are "Net Cash" the bill is payable before the tenth of the month following the date of the purchase; the witness testified that defendant called at their office almost every day and that they had never had any trouble with him. Another witness testified to the same effect, and that "he (Feldstein) may pay the bill within thirty-five days and still get 3% off; if he takes longer he will have to pay the full amount"; that the arrangement was that if the article was not disposed of or sold it should be returned, but if he retains it he must pay for it.

The defendant pawned the stones covered by the five consignments in evidence. Bornstein, to whom they were pawned, testified that he had known defendant for about 15 years and had done business with him; that there was nothing unusual about pawning the diamonds, as it is a common practice in Chicago for retail jewelers and wholesale jewelers to pawn their diamonds for the purpose of paying bills. Charles Ellbogen testified he received several notes from defendant in payment of diamonds consigned to him, but

could not tell whether the notes covered the diamonds mentioned in the consignments which are in evidence; he would not say that he did not get notes from defendant in payment for the diamonds described in the consignments.

Defendant argues in this court that while certain portions of the printed matter in the memo. of consignment might indicate that the defendant received the goods as bailee, yet the writing giving the price of the articles and the terms of sale, with the evidence that these consignments were in the ordinary course of business in which, if the articles were not sold by the defendant, they were to be returned by him, the contract was not a bailment but a contract ''on sale or return.''

In *House v. Beak,* 141 Ill. 290, a contract ''on sale or return'' is defined as ''an agreement by which goods are delivered by a wholesale dealer to a retail dealer to be paid for at a certain rate, if sold again by the latter; and if not sold to be returned.'' (Story on the Law of Sales, sec. 249.) The opinion further says that if the vendee returns the goods, the contract of sale is at an end; ''if he does not, the sale becomes absolute, and the price of the goods may be recovered in an action for goods sold and delivered''; that the consignee may deal with the goods as his own, ''is under no obligation to give any account of his disposition of them, and is only liable to pay for them at a price fixed beforehand.'' In *People v. Gualano,* 349 Ill. 235, it was said that to constitute the offense of larceny as bailee the relationship of bailor and bailee must exist, and that when the identical thing delivered is to be restored in the same or altered form the contract is one of bailment, ''but when there is no obligation to restore the specific article and the receiver is at liberty to return . . . the money value, he becomes a debtor to make such return and the title to the property by

such transaction passes to him." See also, to the same effect, *People v. Wildeman,* 325 Ill. 99, and cases there cited.

We do not consider cases cited by the State as applicable to the present facts. In *People v. Barnard,* 327 Ill. 305, the defendant received a shipment of furs to be purchased at a price to be agreed upon between him and the consignor, and if they could not agree upon a price the defendant was bound to return the shipment intact. This he did not do, but substituted for the furs he received others of an inferior sort, which he sent to the consignor. In *Bergman v. People,* 177 Ill. 244, the jewelry was intrusted to the defendant for the purpose of exhibiting it to others; the representation that the defendant contemplated purchasing jewelry as a wedding present was false and fraudulent and part of a scheme to enable Bergman to secure possession of the jewelry that he might convert it to his own use.

We hold that the consignments of diamonds in question to Feldstein were not bailments but were contracts on sale or return. The fact that Feldstein pawned the diamonds, which seems to be customary in the jewelry trade, does not change the character of the transaction. Feldstein was bound to return the diamonds within a reasonable time, or if he did not do so then he became liable in an action in assumpsit.

Although it was shown that the value of the diamonds consigned was over $2,000, yet the jury found the value of the goods to be $14—evidently a compromise verdict.

Other points are made, upon which it is unnecessary to comment. There being no bailment, defendant could not be found guilty of larceny as bailee.

The judgment of the criminal court is therefore reversed without remanding.

*Reversed.*

MATCHETT, P. J., and O'CONNOR, J., concur.