## In re Estate of James Edwin Martine, Deceased. Edwina Weckler (Administratrix), Appellee. Niles P. Frandsen (Claimant), Appellant.

### Gen. No. 28,398.

1. EVIDENCE—*books of account to show loan.* Entries in books of account are not admissible, under Cahill's Ill. St. ch. 51, ¶ 3, to show money loaned.

2. ESTATES OF DECEDENTS—*memoranda by claimant as evidence of loan.* On appeal from a hearing on a claim against an estate for money loaned to deceased, certain ambiguous memoranda made by claimant, held, insufficient to establish a loan to deceased.

3. EVIDENCE—*desk pad memoranda not book of account.* An ordinary desk pad upon which notations of the usual character made on such pads were made from time to time was not a book of account within the meaning of Cahill's Ill. St. ch. 51, ¶ 3.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Affirmed. Opinion filed April 30, 1924.

DAVID G. ROBERTSON, for appellant.

BEACH & BEACH, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Niles P. Frandsen filed his claim in the probate court of Cook county against the estate of James E. Martine, deceased, claiming that there was $400 due him from the deceased estate on account of two loans made to the deceased in his lifetime, one for $200, October 15, 1920 and the other for $200 made on October 27, 1920. The probate court disallowed the claim. An appeal was taken to the circuit court of Cook county, a jury was waived and there was a hearing before the court where the claim was again disallowed, and claimant prosecutes this appeal.

Claimant sought to establish his claim by what he

termed his book of account. It consisted of several leaves of an ordinary desk pad on which claimant had written from time to time memoranda, being the customary memoranda, as telephone calls, various business appointments and two items on which he based his claims as follows: "Mr. Martine got $200.00 in currency he was too late for bank, will get it in a few days, or can apply on lot in Rose Hill Cemetery—half of lot, Oct. 15-20.

"Oct. 27-20. Martine received $200 for monument man in office, he started to write check but was too slow and both left without me getting check, but it can apply on the cemetery lot same as the other $200 or I can get it all $400 in a day or so or arrange to meet cemetery people."

Claimant testified that he had dealings with Martine in his lifetime and kept a record of them "on a desk pad." He then identified the pad, testifying that the matters contained were in his handwriting; that they were made on the dates they appear under and were true and correct; that these were the only entries he made. The court sustained an objection and refused to admit the pad in evidence.

Richard Thomas Wallace, superintendent of Rose Hill Cemetery, testified on behalf of the claimant that he saw Martine and claimant at the office of the Rose Hill Cemetery on two occasions; that they were there for the purpose of discussing the matter of transferring part of Martine's lot to claimant, with the understanding that Frandsen was to take perpetual care of the half which still remained; that the witness overheard a conversation in which Martine said he was to transfer half of the lot to claimant and asked the witness how he could do it; that Frandsen wanted to buy half of the lot and the money was to be turned over to the cemetery for taking perpetual care of the lot.

The administratrix, the daughter of the deceased, testified for claimant that after her father died she

found an unsigned check in her father's handwriting made out to claimant for $500 which she destroyed.

Claimant contends that the court erred in refusing to admit the book of account in evidence, and it is contended it is admissible by virtue of ¶ 3, chap. 51, Cahill's Statutes, which provides that in any civil action, suit or proceeding, where the claim is founded on a book account, any party or interested person may testify to his account book and the items therein contained; that the same is a book of original entries, and that the entries therein were made by himself, and are true and just. This statute has been construed a number of times by the Supreme Court and by this court and it has been uniformly held that entries in a book of account for money loaned are not admissible. *Boyer v. Sweet,* 3 Scam. (Ill.) 120; *Ruggles v. Gatton,* 50 Ill. 412; *House v. Beak,* 141 Ill. 290; *Schwarze v. Roessler,* 40 Ill. App. 474; *Rothschild v. Sessell,* 103 Ill. App. 274; *MacKenzie v. Barrett,* 148 Ill. App. 414.

In holding that books of account were properly admitted in certain cases, Justice Breese said in the *Boyer* case (p. 122): "This rule would not apply to an account for money lent, as that is not usually the subject matter of account, notes being generally taken, nor to an account containing a single charge only, as that would show no regular dealings between the parties."

In the *Ruggles* case, it was said (p. 416): "It remains to determine, whether appellee's books of account were properly admitted in evidence. In the case of *Boyer v. Sweet,* 3 Scam. 122, it was held, that in case of open accounts composed of many items, where the entries are made by the creditor himself, he having no clerk, the book of original entries is admissible, upon proof being made by persons who had dealt with him and had settled by the same book, that it is fair and correct, and that some of the articles charged were delivered at or about the time the

entries purport to have been made, and that the entries are in the handwriting of the party producing the books. But it was held that the rule would not apply to an account for money lent, or for an account of but a single item. The rule there announced has been repeatedly recognized by subsequent decisions of this court, and without any modification.''

In the *House* case, it was held that ¶ 3, chap. 51, Cahill's Statutes, which was passed in 1867, adds to and enlarges but does not repeal the rule at common law; that it enlarges the common law in that it permits an interested party to testify.

In the *Schwarze* case, it was said that the law permitting books of account to be offered in evidence did not apply to cash items. And in the *Rothschild* case, the court said (p. 283): ''The account books of the firm alone were not sufficient to prove that the entries therein of cash or check charged to the decedent by the firm, were that much money loaned to him by them, for the reason that the usual probative force of accounts kept in books in the usual course of dealings between parties as regards transactions of merchandise and the like 'do not apply to an account for money lent, as that is not usually the subject-matter of an account, notes being generally taken.' '' Citing several authorities.

In the *MacKenzie* case, where it was sought to prove by the claimant that he had loaned the decedent in her lifetime certain money by notations on his check stub, that they as well as the canceled checks were admissible, Mr. Presiding Justice Adams said (p. 417): ''Such entries of charges for money loaned would not be evidence.'' Citing a number of cases. See also to the same effect *Smith v. Rentz*, 131 N. Y. 176 and *Inslee v. Executor of Prall*, 23 N. J. L. 457.

Even if it be conceded that plaintiff's pad might be termed a book of account, it would not be admissible to prove that he had loaned $400 to the deceased in his lifetime. Therefore, the ruling in excluding it was

proper. Moreover, we think the two memorandums are ambiguous and are insufficient to show that claimant loaned the $400 to Martine. The first item is that Martine got $200 and then "will get it in a few days or can apply on lot in Rose Hill Cemetery." This is far from clear and does not warrant the conclusion that claimant loaned Martine $200 which he agreed to pay back. The next item as shown by the memorandum says Martine received $200 "for monument man"; that Martine started to write a check but he was too slow and that both (apparently Martine and the monument man) left without me getting check. The memorandum then continues—"but it can apply on the cemetery lot same as the other $200 or I can get all $400 in a day or so or arrange to meet cemetery people." It seems clear to us that it cannot be said from this memorandum that Martine borrowed $200 from claimant which he was obliged to repay. Nor do we think the pad offered in evidence could in any event be termed a book of account. It is obvious from the several items, which we do not stop to analyse, but, briefly, that they were simply notations made from time to time of the usual character and not in any sense could they be considered as coming within the provision of ¶ 3, chap. 51, Cahill's Statutes. While it is true that no particular form of a book is required to be kept as stated in the case of *Wylie v. Bushnell,* 277 Ill. 484, under no view of the matter do we think the pad can be considered a book of account.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J. and THOMSON, J. concur.