Wayne Windmiller, as Conservator of the Estate of William C. Yokem, Incompetent, and Kathryn Yokem, Petitioners-Appellees-Cross Appellants, v. Frank McCartney, Isabel McCartney, Connecticut General Life Insurance Company, a Corporation, General Telephone Company of Illinois, a Corporation, Northern Illinois Gas Company, a Corporation, Kenneth Stark and William C. Yokem, Defendants, Frank McCartney, Defendant-Appellant-Cross Appellee.

Gen. No. 11,005.

Fourth District.

April 24, 1969.

Grigsby & Irving, and Cecil J. Burrows, of Pittsfield (Brice Irving, of counsel), for appellant.

Drach, Terrell & Deffenbaugh, of Springfield (Raymond L. Terrell, of counsel), for appellees.

SMITH, J.

This is an appeal by a creditor from a decree of the Circuit Court of Pike County granting a petition of a conservator for the sale of his ward's estate. The wife of the incompetent joined in the petition, an accounting was had, and a decree of sale entered. The defendant-McCartney appeals because the trial court refused admission into evidence of a red memorandum book showing cash loans to the incompetent and refused to allow interest on loans advanced subsequent to a written agreement. The conservator cross-appeals because the defendant-McCartney purchased other properties of the incompetent at tax sales and the trial court permitted him to be reimbursed out of the proceeds of this sale.

Yokem owned 315 acres of farmland and from time to time McCartney bailed him out on various items of indebtedness. These items of indebtedness were kept in a regular journal and were finally consolidated into a single amount. Yokem tried to obtain a loan and couldn't. He deeded his land to McCartney and McCartney obtained the loan from the defendant-life insurance company. McCartney then entered into a contract for a deed with Yokem. All of these transactions were prior to the time that Yokem was adjudicated incompetent. Allegedly from time to time McCartney made cash loans to Yokem and these items were entered in a little book that McCartney carried on his person. The trial court refused to admit this book into evidence and the defendant-McCartney contends this is error. McCartney sought to establish cash loans of $3,000, on the strength of this little red book.

McCartney testified that the book was a book of original entries, that the entries were made by him and that they were just and true, and made at approximately

265

the same time of the transaction. Thus so far as this testimony is concerned, he complied with the rules laid down in Rude v. Seibert, 22 Ill App2d 477, 161 NE2d 39, and Higgins v. Higgins, 72 Ill App2d 179, 219 NE2d 88. The petitioners concede that a book of account as to which a proper foundation has been thus made may be introduced as against a conservator if the book of account relates to a transaction other than a cash loan. Both parties discussed § 3 of the Evidence Act, Ill Rev Stats 1967, c 51, § 3, on the admissibility of this book. If it is admissible at all, it is admissible under Supreme Court Rule 236, Ill Rev Stats 1967, c 110a, § 236. This section in effect holds that any writing or record whether in the form of a book entry or otherwise made as a memorandum of record of any act, transaction, occurrence or event shall be admissible as evidence of such act, transaction, occurrence or event if made in the regular course of any business and if in the regular course of such business it was a practice to make such a memorandum of record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. The term "business" as defined in this Rule includes "business, profession, occupation and calling of every kind."

 It is clear from the Committee's comments and from its citation of Secco v. Chicago Transit Authority, 6 Ill App2d 266, 127 NE2d 266, that the Committee intended to unlock the technical shackles of former years and to provide for the admissibility of a written record, document or book where ordinary business practice, the experience of mankind and the accepted custom of the marketplace would establish that there was a satisfactory likelihood that the entry made or the record made spoke the truth rather than otherwise. It appears to be the majority rule that unless there is a statute providing otherwise, books of account are inadmissible to show the payment or loan of money on the ground that as the per-

266

son paying or loaning money has it in his power to perpetuate evidence of that fact by taking a receipt or note, the reason for admitting a party's books of account as evidence in his own behalf does not then exist. 84 ALR 148. Unless Supreme Court Rule 236 has obviated this rule, it is still the rule in Illinois. White v. Parish, 302 Ill App 172, 23 NE2d 939; Tucker v. Tucker, 316 Ill App 671, 45 NE2d 558; In re Estate of Martine, 233 Ill App 94. In this last cited case, the court held that a desk pad containing a memorandum was not admissible in evidence and in addition held that the memorandum itself had no probative value in view of the wording contained on the memorandum. The red book of Mr. McCartney's was subject to both infirmities. To permit a memorandum of this character to be admitted without further or additional corroborative proof is, we think, to open the sluice gates to much difficulty. MacKenzie v. Barrett, 148 Ill App 414, held that the check stubs were insufficient to show that loans had been made to a decedent. In addition, the red book contained these notations: "December 23, 1958, $250.00; 1959, June 13, $700.00; August 16, $400.00; December 21, $500.00." These items are in no way identified with William C. Yokem except that they do appear on a page where some reference as to other items is made as to him. In our judgment, this type of record is far removed from a business record which can be or should be admitted into evidence under Rule 236. Its probative value is relatively nil. It would seem to come in the category of diaries and small memorandum books or casual records whose admissibility is generally condemned. 17 ALR2d 269, § 27. It was properly refused admission into evidence.

■ McCartney also claims interest on advances made after the contract to reconvey on the theory that since that contract, plus its amendment increasing the amount due, called for interest, then all like sums should draw interest. One of the difficulties with this position is that

the petitioners' suit asked for an accounting between the parties, stated that one had been requested but never made, and that the accounting involved not alone amounts paid by McCartney for the use of Yokem to others, but also the cash loans to which reference has been made and in addition the adjustment between the parties on a lease of part of the farmland to McCartney. Under these circumstances, it is our judgment that the statute permits interest to be charged at the statutory rate of 5% only from the time that the account was stated by the court. The contract rate of interest applies to the contract obligation. The statutory rate of 5% applies both from the day of liquidating accounts between the parties and ascertaining the balance. Ill Rev Stats 1967, c 74, § 2.23, ILP, Interest, § 19.

 The trial court permitted McCartney to include as a part of the money owed the sum of $1,112.42, for the purchase of tax sale certificates on various properties of the incompetent. For the reasons heretofore stated, the trial court correctly refused to allow interest on these items. The conservator urges that McCartney became a pure volunteer; that there is no evidence of any request on the part of the petitioners for him to buy the property for taxes for their benefit or to refrain from taking such a tax deed, and therefore he became either a pure volunteer or was attempting to acquire a right to a deed of conveyance to these properties which negatives any thought that it was being done for the interest or benefit of the Yokems. McCartney does not bring himself within the provisions of Ill Rev Stats 1967, c 120, § 741 and § 742, where it is provided that where there has been an erroneous sale of property the certificate purchaser may recover his money on the theory that it has been paid for the owner's use, together with 10% interest. The petitioners state that none of the certificates were exchanged for deeds as contemplated by the statutory requirements. If the time limit for pro-

curing such a deed has not expired, then it is, of course, the duty and the obligation of the conservator to take the necessary steps to redeem from the tax sales. He would not, in our judgment, be performing his obligation to the estate if he failed to do so. Accordingly, we see no impropriety in the action taken by the trial court in permitting a recovery of the principal amount so advanced for the payment of taxes and his inclusion of this amount without interest is accordingly affirmed. If the time has expired for obtaining a tax deed, then it is appropriate to discharge the tax certificates upon their surrender and payment to McCartney of their face-dollar amount. If any such certificates are not surrendered, then payment for such unsurrendered certificates shall be denied.

The decree of the trial court should be and the same is hereby affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.