# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Crawford*, 2019 IL App (1st) 182703

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF KEVIN CRAWFORD, Deceased (Wayne Crawford, Claimant-Appellant, v. Erwin Schmidt, Independent Administrator, Respondent-Appellee).–*In re* ESTATE OF ANITA CRAWFORD, Deceased (Wayne Crawford, Claimant-Appellant, v. Erwin Schmidt, Independent Administrator, Respondent-Appellee). |
| District & No. | First District, Fourth Division<br>Nos. 1-18-2703, 1-19-0113 |
| Filed | December 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 17-P-1680, 17-P-1681; the Hon. Mary Ellen Coghlan, Judge, presiding |
| Judgment | Affirmed. |
| Counsel on Appeal | Adrian Vuckovich, of Collins Bargione & Vuckovich, of Chicago, and Fredrick C. Cappetta, of Cappetta & Associates, Ltd., of Oak Brook, for appellant.<br><br>Richard Lee Stavins and Diana H. Psarras, of Robbins, Salomon & Patt, Ltd., of Chicago, for appellee. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1      The instant consolidated appeals arise from the denial of a claim filed by claimant Wayne Crawford against the estates of decedents Kevin and Anita Crawford, claimant's son and daughter-in-law, after the two were killed in an automobile accident. Claimant filed a claim against each estate, seeking reimbursement of $223,529.59 that he had paid to the decedents over 12 years, claiming that the payments were loans. Respondent Erwin Schmidt, the independent administrator of both estates and Anita Crawford's father, filed a motion for summary judgment with respect to each estate, claiming that the Dead-Man's Act (735 ILCS 5/8-201 (West 2016)) meant that claimant could not establish that he had made any payments to the decedents or that any payments were loans and not gifts. The probate court granted summary judgment in respondent's favor, denying claimant's claim, and claimant appeals. For the reasons set forth below, we affirm.

¶ 2      BACKGROUND

¶ 3      The record on appeal establishes that decedents Kevin and Anita Crawford were killed in an automobile accident on February 16, 2017; Kevin was 52 years old, and Anita was 50 years old at the time of the accident. Decedents had three children, one of whom was also killed in the accident, and Anita's parents were named as guardians of the other two children, both minors.[1] Respondent is Anita's father, and claimant is Kevin's father.

¶ 4      On March 14, 2017, respondent filed petitions for letters of administration in both decedents' estates, and on April 10, 2017, the probate court appointed respondent as independent administrator for both estates. On the same day, the probate court entered an order finding decedents' children to be their only heirs.

¶ 5      On August 4, 2017, claimant filed a claim against each estate, alleging that he had a claim for $223,529.55 against each estate jointly and severally. In support, claimant alleged that, beginning in 2005, decedents had financial burdens they were unable to satisfy and borrowed funds from claimant from time to time, which they agreed to repay; claimant alleged that these expenses typically included weekly groceries, utility bills, and payments on debts. Claimant further alleged that these expenses included leasing decedents a vehicle for their use, which he paid off after their deaths. Claimant alleged that he kept a contemporaneous log of the various amounts and dates on which decedents requested funds but that "many incidents of borrowing were not entered in the log." Claimant alleged that he advanced decedents money from a home equity line of credit on his home, from his checking account, and by cash and credit card.

¶ 6      In support of his claim, claimant attached (1) a three-page handwritten contemporaneous log maintained by claimant, showing the date and amount of each disbursement, (2) a spreadsheet summarizing the transactions detailed in the log, (3) statements from PNC Bank,

---

[1] One of the children turned 18 during the pendency of the instant litigation, while the other is currently 12 years old.

showing checks paid from the home equity line of credit, (4) statements from US Bank, showing checks disbursed to decedents from claimant's checking account, (5) an unsigned, unnotarized "affidavit" from claimant, containing the same allegations as included in the claim, and (6) the lease documents for the vehicle leased by claimant.

¶ 7 On October 5, 2017, respondent filed an answer to claimant's claim, in which he stated that he "has no knowledge thereof sufficient to form a belief as to the truth of the allegations" concerning claimant's payment of money to decedents.

¶ 8 On December 8, 2017, respondent filed a petition to partially settle a wrongful-death cause of action against the person who caused decedents' death, which the probate court granted on December 23, 2017. Respondent also subsequently filed a petition to approve a structured settlement with decedents' insurance company on April 18, 2018, which he amended on June 15, 2018; the petition was granted on July 31, 2018.

¶ 9 On March 13, 2018, respondent filed a motion for summary judgment with respect to claimant's claim against each estate, claiming that the Dead-Man's Act precluded claimant from establishing that he made any loans to decedents. Respondent further argued that, to the extent that claimant could establish that he transferred any funds to decedents, such transfers were presumed to be gifts and claimant was unable to rebut the presumption because he could not establish that decedents understood the transfers to be loans. Respondent noted that claimant was relying on the testimony of (1) himself, (2) his daughter-in-law, Barbara, and (3) another son, Michael.[2] Respondent argued that claimant's testimony was clearly barred by the Dead-Man's Act, as was his handwritten log that purported to detail the transactions made. Respondent also argued that there was no exception that would permit the log to be admitted into evidence. Additionally, respondent claimed that, even if they were not barred by the Dead-Man's Act, the testimony of Barbara and Michael added nothing to the proceedings, as neither had personal knowledge about decedents' intentions. Finally, respondent noted that some of the purported transfers were from accounts on which Kevin was a joint owner and claimed that, therefore, claimant was paying Kevin money that legally belonged to him, which could not be characterized as a loan.

¶ 10 In response, claimant argued that he was able to overcome the presumption that his transfers were gifts, based on the documentary evidence provided by claimant and on testimonial evidence. Claimant argued that his own testimony would demonstrate his intent and that he would testify as to the foundation for the log that he prepared. Claimant also argued that Barbara's testimony would demonstrate that decedents received money from claimant and would support claimant's testimony as to the log and as to claimant's intent. Claimant claimed that his testimony was not precluded by the Dead-Man's Act because it fell under the foundational exception set forth in section 8-401 of the Code of Civil Procedure (Code) (735 ILCS 5/8-401 (West 2016)). Claimant also argued that permitting the estates to retain the funds would result in unjust enrichment to the estates.

¶ 11 Attached to claimant's response were two affidavits: his own affidavit and the affidavit of Barbara. In his affidavit, claimant averred that he lent various sums of money to the decedents between May 18, 2008, and February 2017 and that he intended that the monies be repaid in

---

[2]The record shows that claimant is a widower and he and his late wife had four sons, three of whom are now deceased. Barbara Crawford is the widow of one of claimant's sons, Wayne Jr., and Michael Crawford is claimant's sole living son.

full and never intended that the funds would constitute gifts. Claimant further averred that, as part of his recordkeeping, he maintained a handwritten log on which he listed the amount of each advancement, the date of each advancement, a running total of amounts due and owing, and "companion entries that each advancement was borrowed." In her affidavit, Barbara averred that she "[had] personal knowledge of the transaction log kept by [claimant] and [had] personal knowledge of [decedents'] continual receipt of money from [claimant]." Barbara further averred that, "[d]uring the time in question, [she] had personal knowledge that [claimant's] intent was to be repaid by the decedents and that [claimant] did not intend the advancements to be donative."

¶ 12    On April 23, 2018, respondent filed a motion to strike claimant's affidavit, claiming that claimant's testimony in his affidavit as to what he did or what he thought was barred by the Dead-Man's Act. Respondent further claimed that claimant's attempt to authenticate a document in his affidavit was also barred by the Dead-Man's Act and by hearsay rules of evidence. On the same day, respondent also filed a motion to strike Barbara's affidavit, claiming that Barbara could not have personal knowledge of claimant's intent and further claiming that, even if she could, the affidavit did not set forth any facts with particularity but only set forth conclusions.

¶ 13    In response to respondent's motions to strike, claimant argued that the affidavits consisted of facts within the affiants' personal knowledge and repeated the arguments made in his response to the motion for summary judgment concerning the applicability of section 8-401 of the Code.

¶ 14    On September 6, 2018, the probate court granted respondent's motion to strike, finding that claimant's testimony concerning the alleged loans was barred by the Dead-Man's Act because "[t]estimony by an adverse party on his own behalf regarding events which took place in the presence of the deceased is inadmissible." The court also found that the written log and claimant's testimony about the log were similarly barred by the Dead-Man's Act and did not fall under the exception set forth by section 8-401 of the Code. The court found that,

> "[r]egardless of whether the Claimant's written log qualifies as a 'book account or any other record or document', as required by 735 ILCS 5/8-401, the Supreme Court of Illinois and the appellate courts of this state have consistently held that entries in a book of account for money loaned are not admissible, as that is not usually the subject matter of an account."

With respect to Barbara's affidavit, the probate court found that her assertions regarding claimant's intent were conclusory and not based on evidentiary facts to which she would be capable of testifying. Accordingly, the probate court struck claimant's affidavit in its entirety and struck the paragraph of Barbara's affidavit concerning claimant's intent. The court also gave claimant leave to file an amended response to respondent's motion for summary judgment, which he did not do. Instead, on October 5, 2018, claimant filed a motion to reconsider the probate court's September 6, 2018, order striking claimant's affidavits, arguing that the court erred in its application of the law.

¶ 15    On November 26, 2018, the probate court denied claimant's motion to reconsider, finding unpersuasive claimant's argument that his log was not a book of account but was an "other record or document" permitted under section 8-401. The court found that the legislature intended "other record[s] or document[s]" to refer to records and documents similar to account books, meaning that claimant's log would not fall under that exception if it was truly different

than a book of account, as claimant argued. The court also found that, apart from this evidence, claimant's remaining evidence failed to overcome the presumption that the transfers were gifts. Accordingly, the probate court granted respondent's motion for summary judgment and denied claimant's claim.

¶ 16 On December 21, 2018, claimant filed notices of appeal with respect to both estates, appealing the September 6, 2018, order striking his affidavits and the November 26, 2018, order granting summary judgment and denying his claim. We consolidated the two appeals on March 29, 2019.

¶ 17 ANALYSIS

¶ 18 On appeal, claimant claims that the probate court erred in granting respondent's motion to strike and in granting summary judgment in respondent's favor. We have jurisdiction over the instant appeals pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), which permits appeals from "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." The disallowance of a claim against an estate is one such order that may be appealed to this court. Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988) (listing "allowing or disallowing a claim" as an example of an appealable order under Rule 304(b)(1)); *Hines v. Department of Public Aid*, 358 Ill. App. 3d 225, 228-29 (2005).

¶ 19 I. Motion to Strike

¶ 20 In the case at bar, we first consider the probate court's decision on the motion to strike, as its decision to strike claimant's affidavit and a portion of Barbara's affidavit meant that claimant could not rely on those documents in support of his arguments concerning the motion for summary judgment, nor could he rely on the handwritten log that was purportedly authenticated by claimant's affidavit. The sufficiency of affidavits filed in opposition to a motion for summary judgment is governed by Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). *Garland v. Sybaris Clubs International, Inc.*, 2019 IL App (1st) 180682, ¶ 37. Rule 191(a) requires that affidavits (1) be based on the personal knowledge of the affiant, (2) set forth with particularity the facts on which the claim is based, (3) attach sworn or certified copies of documents that the affiant relied on, and (4) consist of facts admissible in evidence and not conclusions. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013); *Garland*, 2019 IL App (1st) 180682, ¶ 37. Strict compliance with the requirements of Rule 191(a) is necessary because an affidavit submitted in the context of summary judgment proceedings serves as a substitute for testimony at trial. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335-36 (2002). "In addressing a motion for summary judgment, a trial court may not consider evidence or testimony that would not be admissible at trial. [Citation.] Therefore, affidavits submitted in opposition to a motion for summary judgment must consist of facts admissible in evidence and not of conclusions. [Citation.]" *Garland*, 2019 IL App (1st) 180682, ¶ 37. We review *de novo* the propriety of a trial court's striking all or part of an affidavit in the context of summary judgment proceedings. *Garland*, 2019 IL App (1st) 180682, ¶ 38. *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 21 With respect to Barbara's affidavit, the probate court struck paragraph 4, in which Barbara averred:

"During the time in question, I had personal knowledge that [claimant's] intent was to be repaid by the decedents and that [claimant] did not intend the advancements to be donative."

The probate court struck this paragraph because it found that Barbara's assertions regarding claimant's intent were conclusory and were not based on evidentiary facts to which she was capable of testifying. We agree.

¶ 22    As an initial matter, we note that claimant's arguments concerning Barbara's affidavit are forfeited, as claimant does not make any argument concerning the affidavit in his brief on appeal.[3] Claimant does make a brief argument concerning paragraph 3 in his reply brief, but paragraph 3 was not stricken by the probate court. Moreover, it is well settled that points not argued in the appellant's initial brief are forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *Wright-Young v. Chicago State University*, 2019 IL App (1st) 181073, ¶ 101.

¶ 23    Additionally, even if claimant had properly presented his argument on appeal, we agree with the probate court on the merits. Paragraph 4 of Barbara's affidavit is wholly conclusory, simply reciting that she "had personal knowledge" of claimant's intent in making payments to decedents. The affidavit does not provide any support for this assertion or explain the basis of this conclusion as to claimant's intent. As noted, Rule 191(a) requires that affidavits set forth with particularity the facts on which the claim is based and consist of facts admissible in evidence and not mere conclusions. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013); *Garland*, 2019 IL App (1st) 180682, ¶ 37. Here, paragraph 4 of Barbara's affidavit does not satisfy these requirements and, accordingly, the probate court correctly struck it.

¶ 24    We turn, then, to the main issue on appeal: whether the probate court properly struck claimant's affidavit and, consequently, the handwritten log that was purportedly authenticated by that affidavit. In the case at bar, the probate court found that claimant was prohibited from testifying as to the alleged loans by the Dead-Man's Act (Act) (735 ILCS 5/8-201 (West 2016)). The Act is set forth in section 8-201 of the Code and provides, in relevant part:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." 735 ILCS 5/8-201 (West 2016).

¶ 25    Claimant does not dispute that the Act would generally apply to bar his testimony in the instant action.[4] Claimant is clearly both an adverse party and a person directly interested in

---

[3] The sole reference to Barbara's affidavit in the analysis portion of claimant's brief is that "[claimant] clearly refuted any such presumption [of a gift], as did Barbara Crawford, both of whom clearly stated that the advances were not gifts and that it was expected that the advances were to be repaid."

[4] We note that, despite affirmatively acknowledging that the Act would normally apply in his initial brief on appeal, in his reply brief, claimant argues that respondent waived the prohibition of the Act by arguing that the transactions were gifts. As noted, claimant may not raise an argument for the first time

the action. See *In re Estate of Ierulli*, 167 Ill. App. 3d 595, 599 (1988) ("In order to disqualify a witness as one directly interested in the action, the witness' interest in the judgment must be such that some pecuniary gain or loss will come to the witness directly as an immediate result of the judgment."). Accordingly, he would not be able to testify on his own behalf as to any conversations with decedents or to events taking place in their presence. The making of a loan to decedents would certainly fall within the purview of the Act's prohibition. See, *e.g.*, *Smith v. Haran*, 273 Ill. App. 3d 866, 876 (1995) (noting that testimony that the decedent paid money pursuant to a promissory note would "clearly qualify as an event" under the Act), *overruled on other grounds by Gunn v. Sobucki*, 216 Ill. 2d 602, 612 (2005);[5] *Gunn*, 216 Ill. 2d at 610 (finding that testimony that a payment was not made as consideration under a bill of sale was considered an event under the Act). The Act bars evidence that the decedent could have refuted if he was alive. *Gunn*, 216 Ill. 2d at 609. In the case at bar, if decedents were alive, they would be able to refute claimant's characterization of payments to them as loans. Thus, claimant's testimony to the contrary as to those transactions would be barred by the Act. See *Gunn*, 216 Ill. 2d at 611 ("Since a decedent is unable to testify about a payment, whether actually made or not, fairness dictates that an adverse party also be unable to testify as to the payment.").

¶ 26   In the case at bar, instead of arguing that the Act is inapplicable, claimant argues that an exception applies. Under the Act, "[a]ny testimony competent under Section 8-401 of this Act, is not barred by this Section." 735 ILCS 5/8-201(c) (West 2016). Section 8-401 of the Code is entitled "Account books and records" and provides, in relevant part:

> "Where in any action or proceeding, the claim or defense is founded on a book account or any other record or document, any party or interested person may testify to his or her account book, or any other record or document and the items therein contained; that the same is a book, record, or document of original entries, and that the entries therein were made by himself or herself, and are true and just; *** and thereupon the account book and entries or any other record or document shall be admitted as evidence in the cause." 735 ILCS 5/8-401 (West 2016).

Claimant argues that his handwritten log falls within the purview of this exception and, therefore, he is permitted to testify as to the document's authenticity.

¶ 27   As an initial matter, we note that claimant's statements as to his intent in making any transfers to decedents would not fall within the purview of section 8-401. Section 8-401 simply permits a party to satisfy the foundational requirements for admission of their records through their own testimony instead of requiring a clerk or other employee to testify to them, as was required under the common law. *House v. Beak*, 141 Ill. 290, 296-97 (1892) (discussing predecessor to section 8-401).[6] It does not provide an exception for the party to testify about

---

in his reply brief. Moreover, respondent's claim that claimant had failed to provide competent evidence rebutting the presumption of gift is in no way a waiver of the Act.

[5]We note that, while the *Smith* court concluded that *nonpayment* under a promissory note would *not* constitute an event, the *Gunn* court overruled *Smith* on this point, finding that, "[f]or purposes of applying the Dead-Man's Act, there is no logical basis for distinguishing between a payment made and one not made." *Gunn*, 216 Ill. 2d at 610.

[6]Our supreme court has indicated that the original form of the Act "is similar to today's Act, except that the current version is slightly less restrictive." *Gunn*, 216 Ill. 2d at 611. Thus, case law interpreting

his intentions in making the transactions detailed in that record. Claimant provides no authority to suggest that the limited exception provided by section 8-401 should be expanded to incorporate testimony about the parties' intentions in such a way. Accordingly, the probate court properly struck the portion of claimant's affidavit concerning his intent in making any payments to decedents as barred under the Act.

¶ 28 With respect to claimant's log and his statements intending to authenticate the log, section 8-401 applies only where "the claim or defense is founded on a book account or any other record or document." 735 ILCS 5/8-401 (West 2016). While section 8-401 does not define "book account,"[7] our supreme court has suggested that "[a]n account-book, to be used as evidence, should be the book containing an entry of transactions in the store, factory or office, as they occur in the regular order of business." *Kibbe v. Bancroft*, 77 Ill. 18, 19 (1875). While it is arguable whether claimant's log satisfies this definition, even if it did, such a log would not be admissible under section 8-401 because it is an account book detailing money purportedly lent to decedents. Our courts have consistently found that an account book for money lent is not admissible under section 8-401 or its predecessors. See, *e.g.*, *Windmiller v. McCartney*, 108 Ill. App. 2d 264, 266-67 (1969) ("It appears to be the majority rule that unless there is a statute providing otherwise, books of account are inadmissible to show the payment or loan of money ***."); *In re Estate of Martine*, 233 Ill. App. 94, 96 (1924) ("This statute has been construed a number of times by the Supreme Court and by this court and it has been uniformly held that entries in a book of account for money loaned are not admissible."); *MacKenzie v. Barrett*, 148 Ill. App. 414, 417 (1909) (finding that notations on check stubs as evidence of loans were inadmissible, as "[i]t would seem that the stubs are no stronger evidence than entries in appellee's book of loans to the deceased of the several sums for which the checks were given, made at the same times at which the checks were given. Such entries of charges for money loaned would not be evidence."); *Ruggles v. Gatton*, 50 Ill. 412, 416 (1869) (noting that the supreme court had previously found that an account book for money lent was not admissible in evidence and finding that "[t]he rule there announced has been repeatedly recognized by subsequent decisions of this court, and without any modification. It must, therefore, be regarded as the settled law of the court."); *Boyer v. Sweet*, 4 Ill. 120, 122-23 (1841) (admission of account books "would not apply to an account for money lent, as that is not usually the subject matter of [an] account, notes being generally taken"). The rationale behind such a rule is that loans are usually documented in ways other than through an account book, namely, through the execution of notes evidencing the loans. See *Windmiller*, 108 Ill. App. 2d at 266-67 (noting that the rule prohibiting admission of account books for loans of money is based "on the ground that as the person paying or loaning money has it in his power to perpetuate evidence of that fact by taking a receipt or note, [so] the reason for admitting a party's books of account as evidence in his own behalf does not then exist"); *Boyer*, 4 Ill. at 122-23 (noting that "notes [are] generally taken" as evidence of money lent). Accordingly, even if claimant's log was an account book, it would not be admissible under the exception set forth in section 8-401 because it is purportedly an account book for money loaned to decedents.

---

older versions of the Act has been used in interpreting the current version. See, *e.g.*, *Gunn*, 216 Ill. 2d at 612.

[7]We note that the case law, as well as section 8-401 itself, use the terms "book account" and "account book" interchangeably.

¶ 29    However, that is not the end of our inquiry. Section 8-401 applies where "the claim or defense is founded on a book account *or any other record or document*." (Emphasis added.) 735 ILCS 5/8-401 (West 2016). Therefore, we must thus consider whether claimant's log falls within this second category of admissible documents. "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21 (citing *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13). "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 21 (citing *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010)). "A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous." *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 21 (citing *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14). " '[W]hen statutory language is plain and certain the court is not free to give it a different meaning.' " *Kalkman v. Nedved*, 2013 IL App (3d) 120800, ¶ 12 (quoting *In re Estate of Hoehn*, 234 Ill. App. 3d 627, 629 (1992)). "[A] court may not depart from the plain statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Kalkman*, 2013 IL App (3d) 120800, ¶ 12 (citing *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009)).

¶ 30    However, "[i]t is a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used. [Citations.]' " *Corbett v. County of Lake*, 2017 IL 121536, ¶ 27 (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). The terms in a statute are not to be considered in a vacuum; instead, "the words and phrases in a statute must be construed in light of the statute as a whole, with each provision construed in connection with every other section. [Citations.]" (Internal quotation marks omitted.) *Corbett*, 2017 IL 121536, ¶ 27. "[D]issecting an individual word or phrase from a statutory provision and mechanically applying to it a dictionary definition is clearly not the best way of ascertaining legislative intent." *Corbett*, 2017 IL 121536, ¶ 28.

¶ 31    In the case at bar, we must determine whether section 8-401's reference to "any other record or document" (735 ILCS 5/8-401 (West 2016)) may be interpreted to include a log of transfers of money purportedly loaned to a decedent, despite the fact that such a document is prohibited if it is considered to be a book account. The original form of section 8-401, enacted in 1867, did not contain this language—it simply referred to "a book account." 1867 Ill. Laws 184 (§ 3). The additional language was added in 1949, when the statute was amended to apply to "a book account or any other record or document." 1949 Ill. Laws 919 (§ 3). At least one court has interpreted the amended statute to continue to prohibit a book purporting to document loans, reasoning that the party claiming to have made the loan had it in his power to perpetuate evidence of a loan by virtue of issuing a note or even a receipt. See *Windmiller*, 108 Ill. App. 2d at 266-67. Thus, under this interpretation, claimant's log in the instant case would not fall within section 8-401's exception.

¶ 32    In interpreting section 8-401, we are also guided by the use of the cardinal rule of statutory construction known as *ejusdem generis*. "Under the *ejusdem generis* doctrine, when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.' " *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009) (quoting *People v. Davis*, 199 Ill. 2d 130, 138 (2002)). "*Ejusdem generis* is a 'common drafting technique designed to save

the legislature from spelling out in advance every contingency in which the statute could apply.' " *Pooh-Bah Enterprises*, 232 Ill. 2d at 492 (quoting 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:17, at 370-73 (7th ed. 2007)).

¶ 33 Similarly, under the canon of statutory construction known as *noscitur a sociis*, " 'a word is given more precise content by the neighboring words with which it is associated.' " *Corbett*, 2017 IL 121536, ¶ 31 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)). Such a canon is particularly useful when construing one term in a list, in order to avoid interpreting the term so broadly that it is inconsistent with its accompanying words, "thus giving unintended breadth to [legislative acts]. [Citation.]" (Internal quotation marks omitted.) *Corbett*, 2017 IL 121536, ¶ 32.

¶ 34 On the other hand, as claimant points out, statutes should be interpreted so that no clause is meaningless, meaning that "any other record or document" (735 ILCS 5/8-401 (West 2016)) must mean something other than a "book account" (735 ILCS 5/8-401 (West 2016)). See *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 21 (citing *Slepicka*, 2014 IL 116927, ¶ 14). Additionally, the "list" to be considered in this case consists of one item, namely, a book account, making it more challenging to draw firm conclusions as to the meaning of "other record[s] or document[s]" (735 ILCS 5/8-401 (West 2016)). In the case at bar, however, we must ultimately agree with respondent that claimant's log would not fall within the purview of section 8-401.

¶ 35 As noted, the reason behind the exception that is now codified in section 8-401 was to permit a party to testify to his own books, which he was not permitted to do under the common law. *House*, 141 Ill. at 296; see also *Boyer*, 4 Ill. at 122 (noting that English common law did not permit the books of a tradesman to be admitted into evidence without the testimony of a clerk). The rule did not alter the common-law rule that the records themselves were required to contain entries that were made contemporaneously in the ordinary course of business by a person whose duty it was to make them. *House*, 141 Ill. at 296.[8] Thus, the records permitted by the predecessor to section 8-401 were created in the context of business transactions. By contrast, in the case at bar, the records sought to be admitted into evidence by claimant concern personal transactions: transfers of money between claimant and his son and daughter-in-law. The fact that claimant allegedly intended to be repaid for these payments does not change their personal character. Claimant does not claim to have been in the business of making loans or engaging in other financial matters. Thus, interpreting section 8-401 to encompass these types of transfers means interpreting it to allow an entirely different character of transaction—personal transactions and not business transactions. We see nothing in the language, history, or prior interpretations of section 8-401 that would permit such an expansive reading of the statute, nor has claimant presented any case law in which the statute has been so interpreted. Accordingly, we cannot find that claimant's log falls within the exception set forth by section 8-401, and therefore, it—and claimant's testimony attempting to authenticate it—was barred by the Dead-Man's Act and was properly stricken by the probate court.[9]

---

[8]This rule is presently codified in Illinois Supreme Court Rule 236(a) (eff. Aug. 1, 1992).

[9]Claimant suggests that we should decline to follow the Act, arguing that the "modern trend" is to refuse to apply the Act. However, the Act has been applied by our supreme court as recently as 2005, in *Gunn*, 216 Ill. 2d 602, and we cannot simply decline to apply a statute that remains good law. See also *Doe v. Dilling*, 228 Ill. 2d 324, 327 n.6 (2008) (referencing the Act in a footnote); *Brenner v.*

¶ 36     We note that claimant makes several arguments that the log falls within a hearsay exception and is therefore admissible on that basis. However, the Illinois Rules of Evidence, in which the exceptions to hearsay are set forth, specifically provide that "[a] statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court." Ill. R. Evid. 101 (eff. Jan. 6, 2015). Accordingly, as the Act prohibits the admission of claimant's affidavit and log, that statutory rule would govern. See *In re Estate of Gott*, 213 Ill. App. 3d 297, 301 (1991) (declining to apply hearsay exceptions where the Act barred the testimony sought to be admitted). Therefore, the probate court properly granted respondent's motions to strike claimant's and Barbara's affidavits, as well as the log purportedly authenticated by claimant's affidavit.

¶ 37                              II. Motion for Summary Judgment

¶ 38     Next, we consider whether the probate court properly granted respondent's motion for summary judgment. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 39     "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 40     In the case at bar, the probate court granted respondent's motion for summary judgment because it found that claimant had not established that the transfers from claimant were loans and not gifts.[10] A transfer from a parent to a child is presumed to be a gift. *In re Marriage of*

_____

*Evelyn Statsinger Trust*, 2018 IL App (1st) 180131, ¶ 15 (appellate court referencing Act in discussing testimony).

[10]We note that, on appeal, claimant briefly argues that if he does not prevail on his claims regarding the existence of a loan, he should be permitted to recover based on an unjust enrichment theory.

- 11 -

*Marcello*, 247 Ill. App. 3d 304, 314 (1993); see also *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 76; *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 88; *Frey v. Wubbena*, 26 Ill. 2d 62, 70-71 (1962). Courts have also applied such a presumption to a transfer from a parent to a son- or daughter-in-law, especially when the transfer was to both the child and the in-law. See *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 158 (2001); *In re Estate of McCormick*, 262 Ill. App. 3d 163, 170 (1994). In the case at bar, there is no dispute that such a presumption of gift would apply to the transfers made from claimant to decedents.

¶ 41     A party seeking to overcome the presumption of a gift must do so by "clear, convincing, unequivocal and unmistakable evidence." *In re Estate of Wilson*, 81 Ill. 2d 349, 357 (1980). "Clear and convincing" evidence is "the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995).

¶ 42     In the case at bar, the evidence presented by claimant in support of his claim, apart from the evidence that was stricken by the probate court, consisted of (1) claimant's home equity line of credit account statements, showing withdrawals on various dates, (2) copies of checks from claimant's checking account, showing checks made payable to decedents, and (3) a lease agreement in which claimant leased a Volkswagen. At best, this evidence shows that claimant wrote checks to decedents from his checking account—the home equity account statements and the lease agreement make no reference to decedents at all. The evidence certainly does not establish by clear and convincing evidence that any transfers made to decedents were *not* gifts, meaning that the presumption that they were gifts remains unrebutted.

¶ 43     We find unpersuasive claimant's argument that the question of his donative intent is a question of fact that is inappropriate for summary judgment. This would be the case if claimant had, in fact, provided evidence of such. However, in the case at bar, claimant did not present any admissible evidence as to his intent—for instance, there was no testimony that a disinterested individual had observed any conversations between claimant and decedents regarding the transfers, there was no testimony that claimant or decedents had any conversations regarding their intent in making or receiving the funds, and there was no documentation showing that decedents and claimant had entered into loan agreements. The only evidence as to claimant's intent was his self-serving affidavit and log, both of which were properly stricken under the Dead-Man's Act. Accordingly, the probate court properly granted summary judgment in respondent's favor and denied claimant's claims against decedents' estates.

¶ 44                                          CONCLUSION

¶ 45     For the reasons set forth above, the probate court's judgment is affirmed. The probate court properly struck paragraph 4 of Barbara's affidavit, as it was conclusory and did not set forth

---

However, claimant did not plead an alternative unjust enrichment theory in the claims that he filed before the probate court. Moreover, it is well settled that an unjust enrichment claim is not available where an express contract is alleged. *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992) ("Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." (Internal quotation marks omitted.)).

any evidentiary facts to which she was capable of testifying. The court also properly struck claimant's affidavit and his handwritten log, as they were barred by the Act. Finally, the court properly granted summary judgment in respondent's favor and denied claimant's claims with respect to both decedents' estates.

¶ 46        Affirmed.